**The STATE OF ARIZONA, Plaintiff,**

**v.**

**William Dale MANYPENNY, Defendant.**

**No. CR–76–377–TUC–WCF.**

United States District Court,
D. Arizona.

Sept. 28, 1977.

Stephen D. Neely, Pima County Atty., Daniel Smith, Deputy County Atty., Tucson, Ariz., for plaintiff.

James D. Whitney, Tucson, Ariz., for defendant.

## ORDER

FREY, District Judge.

While acting as a Border Patrol Officer the defendant, William Dale Manypenny, shot and injured a fleeing alien. The event occurred on the Organ Pipe National Monument in Pima County, Arizona, not far from the Mexican border, or perhaps on the Papago Indian Reservation which is also in Pima County. Manypenny was indicted in Pima County Superior Court for assault with a deadly weapon or instrument, a violation of A.R.S., Section 13–249 A and B. The case was removed to this Court pursuant to Title 28, United States Code, Section 1442(a)(1). The defendant was tried, and the jury returned a verdict of guilty. When defendant moved for new trial and for arrest of judgment, the Pima County Attorney failed to respond, and the motion to arrest judgment was granted. The County Attorney immediately moved for reconsideration, and this Court granted the motion.

The motion for arrest of judgment contended that the State of Arizona, and therefore this Court on removal, had no criminal jurisdiction over the land within either the Organ Pipe National Monument or the Papago Indian Reservation. Defendant also contended that the area of immigration is preempted by the United States and that his prosecution is an attempt at regulation of immigration, and, therefore, void. He argued further that the federal criminal laws must be applied to his acts instead of Arizona laws, Title 18, United States Code, Section 13, and that his acts as a federal officer are not within the jurisdiction of the State.

The Court finds on reconsideration that Arizona has criminal jurisdiction over both the Organ Pipe National Monument and the Papago Indian Reservation, that the Arizona statute is not void as applied to the area of immigration and that the Arizona criminal statute can be used as to events occurring on said lands. However, the Court also finds that officers acting under color of federal law have a perfect defense to state criminal prosecutions when their actions are honestly and reasonably believed to be necessary and proper in carrying out their federal duties and that such defense is here established.

 Jurisdiction over the place of occurrence will be discussed first. The general rule is that a state has complete jurisdiction over the land within its exterior boundaries. *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1881); *People v. Martin*, 326 U.S. 496, 66 S.Ct. 307, 90 L.Ed. 261 (1946). There are three exceptions. The first is provided by Article I Section 8, Clause 17 of the Constitution of the United States. The United States has exclusive jurisdiction over land "purchased" by the United States "by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings". Since the land here in question was not "purchased" and is not for one of the specified purposes, this first exception is admitted by defendant not to apply. *Fort Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1885). Some examples of such land in Arizona are provided by A.R.S., Sections 26–251 through 253 (land for military purposes) and Sections 37–611 through 613 (land for penal purposes).

 A second exception is recognized when a state affirms the United States' retention of exclusive jurisdiction at the time it is admitted into the Union. Defendant strongly urges the argument that Arizona has so affirmed in Section 20 of its Enabling Act, 36 Stat. 557, 1 A.R.S., p. 81

and Article XX, Paragraph Fourth of Arizona's Constitution, 1 A.R.S. p. 181:

"Fourth. The people inhabiting this State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all lands lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that, until the title of such Indian or Indian tribes shall have been extinguished, the same shall be, and remain, subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States."

*Draper v. United States*, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896), interpreted a clause from the Enabling Act of Montana which is very similar to Arizona's Enabling Act and which appears indistinguishable for the purposes of this case. The holding of the case was that the United States had no jurisdiction over a non-Indian who murdered a non-Indian on an Indian reservation and that Montana did have jurisdiction. The reasoning of the case was that the "absolute jurisdiction" language of the Act was intended only to preserve the complete control of the United States over the *title* to Indian lands owned by Indians outside of reservations. The United States had an interest in preventing the State of Montana from frustrating federal limitations on the alienability of Indian lands.

*Organized Village of Kake v. Egan*, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573, held that the disclaimer of "right and title" in a similar clause by Alaska was a disclaimer of proprietary rather than governmental interest. It held further that "absolute" means undiminished, not exclusive.

■ These cases show that Arizona did not disclaim governmental interests over any land within its external boundaries by this clause in its Constitution. Even a military reservation comes under the jurisdiction of the state on statehood where there is no express savings clause to prevent it.

*Fort Leavenworth R. Co. v. Lowe, supra.* For an example of such an express savings clause, *see*, the Act admitting the State of Wyoming into the Union, 26 Stat. 222 and Title 16, United States Code, Section 24 (Yellowstone National Park).

■ The third exception is the cession of jurisdiction to the United States by an individual state after statehood. *Collins v. Yosemite Park & Curry Co.*, 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938). Yosemite National Park came under the qualified jurisdiction of the United States by this means in 1919. Many National Parks and National Monuments are now under the "sole and exclusive" jurisdiction of the United States. E.g., Title 16, United States Code, Sections 95, 117, 124, 157 and many others. No such cession of jurisdiction was ever made by Arizona until 1976 *after* the events in this case. *See* 1964 U.S.Code Cong. & Admin. News, p. 3923 recognizing the facts as they then stood; and A.R.S. Section 37–620, Laws 1976, Ch. 54, Section 1 which cedes *concurrent* rather than exclusive jurisdiction to the United States over the Organ Pipe Cactus National Monument and other parks, monuments, forests and dams.

■ Since Arizona does have jurisdiction over the land in question, its power to prosecute an Immigration Officer acting under color of his federal duty must be examined. Further, since the Arizona criminal law concerning assault with a deadly weapon is not a direct attempt to regulate immigration, and since it expresses legitimate State concerns, the preemption doctrine does not prevent the applicability of this law unless it is an unreasonable burden on the implementation of federal immigration policy. *Cf., Southern Pac. Co. v. State of Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945). This is apparently the exact intent of Congress. Title 8, United States Code, Section 1358 provides for local jurisdiction within immigration stations to enforce state criminal laws. The reasonableness of the burden in this situation appears to this Court to involve many of the same considerations as the official duty doctrine protecting federal

officers as set out in *In re Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890), and *Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977). Therefore, these two matters will be discussed together later herein.

*People v. Martin, supra*, sufficiently answers defendant's contention that only the federal criminal statutes can be applied to him even by the State. When there is concurrent jurisdiction, the State may use its own criminal statutes to prosecute.

*Clifton v. Cox, supra*, thoroughly reviews the history and the present status of the doctrine set out in the landmark case of *In re Neagle, supra*. It is not necessary for this Court to repeat the reasoning from *Clifton*; it is sufficient to summarize the holding:

If a person is authorized to do an act by the law of the United States, and if he does no more than what is necessary and proper for him to do, he is innocent of any crime against the laws of any state. This is true if the acts are within the outer perimeter of his line of duty, taking into account that the concept of duty encompasses the sound exercise of discretionary authority. Further, even when an act is not actually authorized, errors of judgment in what one conceives to be his legal duty will not, alone, serve to create criminal responsibility of a federal officer. An officer's acts are *not* necessary and proper only if the official employs means which he cannot honestly consider reasonable in discharging his duties or otherwise acts out of malice or with some criminal intent. The finder of fact may find that the actions were not reasonable under all of the circumstances; however, when the evidence shows that the officer *honestly believed* them to be reasonable, he must be found innocent.

■ As limited by this doctrine, Arizona's criminal law against assault with a deadly weapon cannot be said to be an *unreasonable* burden on the implementation of federal immigration policies. Congress has provided two procedural devices in addition to this judge-shaped doctrine which protect federal officers and federal policies. They are the habeas corpus provision, Title 28, United States Code, Section 2241(c)(2),

used in *Clifton*, and the removal statute, Title 28, United States Code, Section 1442(a)(1), used in the present case. These three limitations are all the protection that the federal immigration policy requires. State criminal law may constitutionally be applied in this case; thus, this Court has jurisdiction.

Procedurally, it is unclear if the determination as to whether defendant Manypenny was carrying out federal duties in performing the act should be decided as a question of law by the Court or should be decided by a jury as a question of fact. *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 26 S.Ct. 229, 50 L.Ed. 343 (1906), seems to hold that it is a question of fact for the jury, but *Clifton* says:

"The issue of petitioner's scope of authority presents a question of law which we find was properly resolved by the district court." *Id.* 549 F.2d at 726.

■ In either event, this Court committed fundamental error; the issue was not properly resolved by the Court at the time of trial. The Court should have considered this principle of law and thus granted defendant's motion for verdict of acquittal or failing that should have submitted the matter to the jury on altogether different instructions which embodied this federal law on the matter of the officer's reasonable belief.

■ Again, in either event, it now appears that the procedurally correct method of rectifying the error after trial was not to arrest judgment pursuant to Title 18, United States Code, Federal Rules of Criminal Procedure, Rule 34, but to grant a judgment of acquittal pursuant to Rule 29(c) or a new trial pursuant to Rule 33. On reconsideration, the Court must reverse its arrest of judgment and proceed with matters as they now stand.

In order to secure simplicity in procedure, fairness in administration and the just determination of this proceeding, this Court will consider the motion for arrest of judgment as a motion under Rule 29(c) for judgment of acquittal. Federal Rules of Criminal Procedure, Rule 2; *cf., United States v. Baker*, 432 F.2d 994 (10th Cir. 1970).

The test for such a motion is whether, viewing the evidence in light favorable to the government, there is relevant evidence from which the jury could reasonably find that the defendant was guilty beyond a reasonable doubt. *United States v. Rojas*, 554 F.2d 938 (9th Cir. 1977). Applying the standards set out in *Clifton v. Cox, supra*, and considering further the standard in *Rojas*, the Court finds that a reasonable jury could not conclude defendant's guilt beyond a reasonable doubt. The motion for judgment of acquittal shall be granted.

IT IS ORDERED that the Order of this Court entered November 30, 1976, is vacated, the motion for arrest of judgment heretofore granted is reconsidered and denied.

IT IS FURTHER ORDERED that considering the motion for arrest of judgment as a motion for judgment of acquittal, the motion is granted, the verdict rendered herein is set aside; defendant, William Dale Manypenny, is ADJUDGED not guilty.

IT IS FURTHER ORDERED that the Clerk of this Court forthwith mail a copy of this Order to all counsel of record herein.