**STATE OF ARIZONA,**
**Plaintiff-Appellant,**

v.

**William Dale MANYPENNY,**
**Defendant-Appellee.**

**No. 77–3453.**

United States Court of Appeals,
Ninth Circuit.

July 9, 1979.

As Amended Aug. 13, 1979.

Stephen D. Neely, County Atty., D. Jesse Smith, Deputy County Counsel, Tucson, Ariz., for plaintiff-appellant.

James D. Whitney, Tucson, Ariz., for defendant-appellee.

Before CHOY and KENNEDY, Circuit Judges, and HALL,* District Judge.

CHOY, Circuit Judge:

The State of Arizona brought this criminal prosecution against Manypenny, a border patrolman of the United States Immigration and Naturalization Service. The State charged Manypenny with assault with a deadly weapon in violation of Arizona law. Ariz.Rev.Stat. § 13–249(A) & (B). On Manypenny's motion, the case was removed to federal court. *See* 28 U.S.C. § 1442(a)(1).[1]

After trial, the jury returned a verdict of guilty. Manypenny then moved for arrest of judgment or, alternatively, for a new trial. *See* Fed.R.Crim.P. 33, 34. The court granted the Rule 34 motion for arrest of judgment. Thereafter, the State moved for reconsideration of the grant of the Rule 34 motion. The court granted the motion for reconsideration, but no action was taken for a year.

On September 8, 1977, Manypenny moved for a hearing to determine the status of the State's pending motion. The hearing was held on September 26. Two days later, the district court reversed its previous order

---

* The Honorable Peirson M. Hall, Senior United States District Judge for the Central District of California, sitting by designation.

1. 28 U.S.C. § 1442(a)(1) provides:

A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or any person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

arresting judgment. The court construed Manypenny's Rule 34 motion to be a motion for judgment of acquittal under Fed.R. Crim.P. 29(c), granted the motion for acquittal, set aside the jury's verdict and held Manypenny not guilty. *Arizona v. Manypenny*, 445 F.Supp. 1123 (D.Ariz.1977).[2]

The State appeals from these rulings. We find that we are without jurisdiction to entertain such an appeal. We therefore dismiss the appeal.

▓▓▓ It is well-settled that the prosecution has no right to appeal an adverse decision absent some statutory authorization. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Sanges,* 144 U.S. 310, 312, 318–23, 12 S.Ct. 609, 36 L.Ed. 445 (1892).[3] The State contends that it may appeal the judgment in this case under 18 U.S.C. § 3731, the Criminal Appeals Act.

Section 3731 provides in part:

In a criminal case *an appeal by the United States* shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

. . . . .

The provisions of this section shall be liberally construed to effectuate its purposes.

(Emphasis added.)

▓▓▓ While the Supreme Court has stated that § 3731 was "intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit," *United States v. Martin Linen Supply Co.*, 430 U.S. at 568, 97 S.Ct. at 1353, *quoting United States v. Wilson*, 420 U.S. at 337, 95 S.Ct. 1013, it is manifest that § 3731 is limited by its own terms to appeals by the United States as a prosecuting entity. The statute authorizes "an appeal by the United States," not an appeal by a state or by "any of the United States." As we have previously stated, " '[t]he language of a statute is the best and most reliable index of its meaning, and where the language is clear and unequivocal it is determinative of it construction.' " *Smith v. Califano,* 597 F.2d 152, 155 (9th Cir. 1979), *quoting Monte Vista Lodge v. Guardian Life Insurance Co.,* 384 F.2d 126, 128 (9th Cir. 1967), *cert. denied,* 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968).

We note that no court has ever interpreted § 3731 as providing for appeals by a state in a § 1442(a)(1) prosecution. Moreover, the legislative history of this provision and its predecessors makes it clear that Congress was only concerned with appeals by the federal Government.[4]

**2.** The court stated that its reason for ordering Manypenny's acquittal was that he was entitled to immunity under the principle announced in *In re Neagle*, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890). *See Clifton v. Cox*, 549 F.2d 722 (9th Cir. 1977). The immunity defense had not been raised at trial. However, the district court concluded that it had erred in failing to *sua sponte* instruct the jury on such a defense.

**3.** In his dissent, Judge Kennedy suggests that this court may have jurisdiction over the state's appeal under 28 U.S.C. § 1291, the final judgment rule. We disagree.

The Supreme Court has twice held that general appeals provisions are not sufficiently explicit to overcome the common-law rule that the state may not appeal an adverse decision in a criminal case. *United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 43 L.Ed.2d 232

(1975); *United States v. Sanges*, 144 U.S. 310, 318, 322–23, 12 S.Ct. 609, 36 L.Ed. 445 (1892). A statute *expressly* giving the state a right to appeal in a criminal case is required. Section 1291 is not such a statute. Neither does § 1291 allow us to refer to state law to determine whether or not the state has a right of appeal. *See* discussion of state law *infra.*

**4.** Nowhere in the legislative history of the various criminal appeals acts does it appear that Congress addressed or even considered appeals by the state in state prosecutions before the federal courts under § 1442. *See* S.Rep. No. 1296, 91st Cong., 2d Sess. (1970); H.R.Rep. No. 1768, 91st Cong., 2d Sess. (1970); 41 Cong.Rec. 2190–97 (Feb. 4, 1907), 2744–63 (Feb. 12, 1907). The reports and debate on the issue of such acts indicate that Congress was concerned only with the right of the federal Government to

We share the concerns expressed by Judge Kennedy in his dissent that the policy of § 3731, which is designed to "prevent erroneous trial court rulings from thwarting lawful prosecutions," is equally applicable to state prosecutions and federal prosecutions, and that not allowing state appeals in cases removed to the federal courts under § 1442(a)(1) has a substantial effect on the delicate balance of our federal system. However, we cannot rewrite § 3731 for Congress. As the Supreme Court has warned:

> [A] statute "is not an empty vessel into which this Court is free to pour a vintage that we think better suits present day tastes." *United States v. Sisson*, 399 U.S. 267, 297, 90 S.Ct. 2117, 2133, 26 L.Ed. 608 (1970). Considerations of this kind are for Congress, not the courts.

*National Broiler Marketing Association v. United States*, 436 U.S. 816, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978), *quoted in Smith v. Califano*, 597 F.2d at 158.

 Neither can we look to state law as providing Arizona with a right to appeal in this case. A case before the federal courts under § 1442(a)(1) is one within the judicial power of the United States, for it arises under federal law. *See Tennessee v. Davis*, 100 U.S. 257, 262–65, 25 L.Ed. 648 (1879). In a case arising under federal law, federal law, rather than state law, controls. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Deitrick v. Greaney*, 309 U.S. 190, 200–01, 60 S.Ct. 480, 84 L.Ed. 694 (1940); *Board of County Commissioners v. United States*, 308 U.S. 343, 349–53, 60 S.Ct. 285, 84 L.Ed. 313 (1939); *United States v. Crain*, 589 F.2d 996, 998 (9th Cir. 1979).

While in certain cases the Federal courts may adopt state law as federal law, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *D'Oench, Duhme & Co. v. FDIC*, 315

U.S. at 468–72, 62 S.Ct. 676 (Jackson, J., concurring); *Board of Commissioners v. United States*, 308 U.S. at 349–52, 60 S.Ct. 285; *United States v. Crain*, 589 F.2d at 999–1000, adoption of state law in this case does not aid the State's case. As previously noted, the prosecution may appeal only where authorized to do so by statute. *See United States v. Martin Linen Supply Co.*, 430 U.S. at 568, 97 S.Ct. 1349; *United States v. Wilson*, 420 U.S. at 336, 95 S.Ct. 1013; *United States v. Sanges*, 144 U.S. at 312, 318–23, 12 S.Ct. 609. Adoption of state law as the federal rule would not meet this requirement of statutory authorization, for such a federal rule would be a "common law" rule, even if based upon a state statute. *See United States v. Crain*, 589 F.2d at 998–1000; *United States v. Best*, 573 F.2d 1095, 1101 (9th Cir. 1978).

In conclusion, only Congress can authorize an appeal by a state in a § 1442(a)(1) criminal prosecution. Thus far, Congress has not seen fit to do so. Therefore, we hold that we are without jurisdiction to entertain this appeal.

APPEAL DISMISSED.

KENNEDY, Circuit Judge, dissenting:

I respectfully dissent from the majority's conclusion that we are without jurisdiction to entertain this appeal.

There are two possible sources of jurisdiction, 18 U.S.C. § 3731 and 28 U.S.C. § 1291. With respect to section 3731, the majority concludes that the section must be confined to the United States. This is a reasonable position and it certainly has textual validity. But while a court cannot ignore the language of the statute, the Supreme Court has warned against "the dangers of an approach to statutory construction which confines itself to the bare words of a statute . . . for 'literalness may strangle meaning.'" *Lynch v. Overholser*, 369 U.S.

---

appeal in criminal cases. *See* S.Rep. No. 1296 at 2, 5, 9–11, 18; H.R.Rep. No. 1768 at 21; 41 Cong.Rec. at 2190 (remarks of Sen. Hale) (concerned with rights of the "General Government"), 2192 (remarks of Sen. Bacon) (concerned with lower court determinations that

acts of Congress unconstitutional), 2760 (remarks of Sen. Spooner) (the United States should have the same right to appeal in federal criminal cases as many of the states do in their own courts).

705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962) (quoting *Utah Junk Co. v. Porter*, 328 U.S. 39, 44, 66 S.Ct. 889, 90 L.Ed. 1071 (1946)). It is true that no court has ever interpreted section 3731 as providing for appeals by a state; on the other hand we find no holding to the contrary. This is, apparently, a case of first impression. The legislative history reveals that Congress simply never considered the question before us. I conclude that Congress did not intend a state to be completely prohibited from appealing in a removed criminal prosecution. My concern with the majority's approach is that as well as producing an anomalous result, it creates serious and difficult problems of federalism. In effect the majority opinion holds that through removal, a state cannot only be deprived of jurisdiction to try a case in its own courts, it can also be completely deprived of any right to appeal that would have existed under state law.

The original Criminal Appeals Act, 34 Stat. 1246 (1907), was the subject of extended congressional debate. *See United States v. Sisson*, 399 U.S. 267, 293–96, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). Upon its enactment, government appeals were limited to a narrow category of cases. The Act was amended in 1971 to permit all appeals that can be maintained consistently with the Constitution, and thus the amendment "remove[d] all statutory barriers to Government appeals." *United States v. Wilson*, 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975). The new Act contains a provision that it shall be liberally construed. 18 U.S.C. § 3731. The statutory scheme is designed to prevent erroneous trial court rulings from thwarting lawful prosecutions. That policy applies with equal force to appeals in those cases in which the state is the prosecuting entity under the removal statute. In view of the sensitive nature of state-federal relations in section 1442(a)(1) removal cases, I do not believe that Congress intended to deprive states of any right to appeal.

Even if one agrees with the majority's interpretation of section 3731, there remains another possible source of jurisdiction, that is, the general grant of appellate jurisdiction under 28 U.S.C. § 1291. In *United States v. Sanges*, 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed.2d 445 (1892), the Supreme Court held that the *United States* cannot appeal in a criminal case without express *congressional* authorization. The Court surveyed both English and American state precedent and concluded that the settled practice was that the state could not appeal criminal cases except in accordance with express statutes. The Court then concluded:

In none of the provisions of this act, defining the appellate jurisdiction, either of this court, or of the circuit court of appeals, is there any indication of an intention to confer upon the United States the right to bring up a criminal case of any grade after judgment below in favor of the defendant. It is impossible to presume an intention on the part of congress to make so serious and far-reaching an innovation in the criminal jurisprudence of the United States.

*Id.* at 323, 12 S.Ct. at 613–614.

While *Sanges* is instructive, neither it nor any other case has held that there must be express *congressional* authorization in order for a state to appeal in federal court.

The rule in English and American law which requires statutory authorization before the prosecution can appeal is rooted in the concern that a sovereign not be given the uncontrolled right to prolong criminal proceedings against those subject to its jurisdiction. *See id.* at 315–16, 12 S.Ct. at 609. Except for this concern, there is nothing peculiar to a criminal judgment that prevents its being appealed under a general grant of appellate jurisdiction, and this is true regardless of the identity of the prevailing party at trial. By enactment of 18 U.S.C. § 3731 the Government of the United States has determined that its interests are well served by criminal appeals, and that the rights of its citizens are given adequate protection by the double jeopardy clause. Given the purposes of the rule requiring special authority for criminal ap-

peals, it was neither appropriate nor necessary for Congress to speak to the authority of prosecutors who represent a separate state as the sovereign initiating criminal charges. That question is solely the prerogative of the State of Arizona, and the State allows appeals in cases such as the one before us. The State's authorization should suffice to permit this appeal under the general appellate jurisdiction granted by 28 U.S.C. § 1291.

Construing section 1291 as giving us jurisdiction to hear an appeal by a state where such appeals are explicitly provided for by state law is not inconsistent with the purpose of allowing removal in cases where federal officers are involved. The federal policies at stake—to provide a fair trial for government officers, free from local bias— are not furthered by altering the instances in which appellate review may be secured by the state. Further, following the state rule would violate no other federal policies. For example, the workload of the federal courts, the integrity of the federal forum, and the difficulty of complying with state rules are not involved here.

If one views the right to appeal as substantive, it is completely consistent with the general scheme in removal actions to look to state law.[1] As the Notes of the Advisory

---

1. The analysis of whether the right to appeal is substantive or procedural is not governed, in a strict sense, by the principles of *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, *see, e. g., Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), for this case is not in federal court because of diversity jurisdiction. The instant case concerns the actions of an officer in his federal capacity and by the removal statute, 28 U.S.C. § 1442(a)(1), Congress has made the implicit declaration that such suits are ones arising under the laws of the United States. *Osborn v. United States*, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 738 (1824); *Tennessee v. Davis*, 100 U.S. 257, 25 L.Ed. 648 (1880). There is no Rules of Decision Act, 28 U.S.C. § 1652, or Rules Enabling Act, 28 U.S.C. § 2072, which governs the choice of law analysis in such actions. *Cf.* Notes of Advisory Committee on Rules, Fed.R.Crim.P. 54(b)(1) (in section 1441(a)(1) removal cases, "the Federal Court applies the substantive law of the State, but follows Federal procedure"). The *Erie* line of cases, however, would be useful by analogy, for if we were to say the right in question is a substantive one and conclude further that Congress has by statute prescribed a federal standard which overrides the state rule on a point which has no bearing upon federal interests in the case, (interests such as the defense of immunity and providing a neutral forum for the trial of federal officers), then we would be exercising federal jurisdiction in a sensitive, perhaps new, dimension. Accordingly, I think the *Erie* line of cases, adopting a general distinction between substantive and procedural rights, would help resolve a choice of law question as to the right of appeal in this case.

The Government's right to appeal in a criminal case could be characterized as substantive, since a particular jurisdiction may afford to the defendant greater protection against multiple trials than is required by the minimum dictates of the fifth amendment double jeopardy clause.

See the debates on the first Criminal Appeals Act, discussed in *United States v. Sisson*, 399 U.S. 267, 293–96, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). On the other hand, it cannot be doubted that Congress has an interest in assigning the responsibility for ruling on questions of law between federal trial and appellate courts, courts which operate under different constraints than do those of a state, and such concerns seem to be procedural in nature. In making the substantive-procedural determination, I would think that balancing the importance of the state and federal policies implicated would be a significant factor in the inquiry. *Cf.* Ely, *The Irrepressible Myth of Erie*, 87 Harv.L.Rev. 693, 717 n. 130 (1974); Redish & Phillips, *Erie and the Rules of Decision Act: In Search of the Appropriate Dilemma*, 91 Harv.L. Rev. 356 (1977) (disagreeing on whether balancing the importance of state and federal policies is appropriate in deciding whether state or federal law should be followed in diversity cases).

What are the state policies supporting the determination of when the state may appeal? Finality and repose are the principal purposes as well, I suppose, as a desire to correct the more serious errors in the lower court proceedings. These considerations also support state decisions regarding statute of limitations and res judicata questions. Both of these issues, in the *Erie* context, have been held matters of state law. Moreover, Arizona and New Mexico cases have held the right to appeal to be a substantive question. *State v. Birmingham*, 96 Ariz. 109, 392 P.2d 775, 776 (1964); *In re Maricopa County Juvenile Action No. JS–834*, 26 Ariz.App. 485, 549 P.2d 580, 583–84 (1976). *See Durand v. New Mexico Comm'n on Alcoholism*, 89 N.M. 434, 553 P.2d 714, 715 (Ct.App. 1976).

Of course, some parts of state appeals statutes might be framed so that compliance by the federal court with all their provisions would be impossible (*e. g.*, specifying which district or

Committee state, in section 1441(a)(1) removal cases, "the Federal Courts apply the substantive law of the State, but follow Federal procedure." Notes of the Advisory Committee on Rules, Fed.R.Crim.P. 54(b)(1).

Having proposed two alternative bases of jurisdiction, I realize that under some circumstances, specifically where the state has not provided for appeals by the state, it will make a difference which theory is relied on. In this case, however, I need not decide between the theories because I conclude that Arizona does provide for appeals by the state.

In *State ex rel. Dawson v. Superior Court*, 112 Ariz. 123, 538 P.2d 397 (1975), the Supreme Court of Arizona granted appellate review, by certiorari, *see* Ariz.Rev. Stat. § 12–2001, of a trial court order setting aside a jury verdict of guilty, followed by entry of a judgment of acquittal.[2] After once remanding to the trial court, the Arizona Court of Appeals reviewed the case on the merits and again confirmed the state's authority to seek review of a trial court's entry of judgment of acquittal. *State v. Allen*, 27 Ariz.App. 577, 557 P.2d 176 (1976). I conclude, therefore, that even if state law were to be controlling, it would not bar Arizona's appeal in this case.[3]

Because the majority reaches a contrary conclusion on this first issue, it has not explored the other problem raised by this case. However, having examined the case, I conclude not only that there is jurisdiction, but that the judgment ought to be reversed.

I turn first to a consideration of whether an appellate ruling favorable to the state would put the defendant twice in jeopardy as a matter of federal law, thus barring the appeal.[4] I think the argument must be resolved against the defendant based on a previous decision of this court and more recent decisions of the Supreme Court of the United States. The entry of a judgment of acquittal, after the jury has returned a verdict of guilty, may be set aside on review without offending the principle against placing a defendant twice in jeopardy because the jury verdict can be reinstated, obviating the need for a second trial. In this case there was also a motion for new trial that was not denied or otherwise ruled upon by the trial court. It should be deemed pending upon remand. If granted, there would be further proceedings, but only because the defendant has asked for them. This outcome similarly does not violate the double jeopardy clause. The reasons for these conclusions follow.

Our circuit has squarely held that where a jury has returned a verdict and the trial

---

which intermediate court of appeals is the proper forum for hearing the appeal). For these questions, federal law and procedure would control. But as to the basic question whether the state can secure appellate review, state law can be accommodated by the federal system.

2. It is quite possible that Arizona courts would permit the state to appeal in this case under Ariz.Rev.Stat. § 13–4032(5), which permits the state to appeal from "[a]n order made after [the] judgment affecting the substantial rights of the state." *See* Ariz.R.Crim.P. 24.2; Rules of the Supreme Court of Ariz. 22(c)(3); *State v. Birmingham*, 96 Ariz. 109, 392 P.2d 775 (1964) ("order" and "judgment" are synonymous as used in the civil appeals statute, Ariz.Rev.Stat. § 12–2101); *State v. Allen*, 557 P.2d at 182–83. Even if no right of appeal existed under § 13–4032, however, appellate review is appropriate under the certiorari statute.

3. Arizona courts have held that although the certiorari statute speaks of review to determine

whether the lower court lacked jurisdiction, the statute also permits review to determine whether a lower court abused its discretion. *See, e. g., State ex rel. Dawson v. Superior Court*, 112 Ariz. 123, 538 P.2d 397 (1975); *State ex rel. Ronan v. Superior Court*, 95 Ariz. 319, 390 P.2d 109 (1964) ("[A] writ of certiorari may be used to review abuse of discretion"); *Jones v. Lopez Plascencia*, 10 Ariz.App. 253, 458 P.2d 120 (1969).

4. If this appeal is viewed as falling under § 3731 then the question of double jeopardy is jurisdictional because that section provides that "no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." If jurisdiction is found by virtue of § 1291 then the double jeopardy issue still must be reached, though technically the presence of double jeopardy is a constitutional bar to a second trial, not a jurisdictional defect in this appeal.

judge subsequently grants a motion for acquittal under Rule 29(c), the prosecution may appeal the judgment, and the jury verdict can be reinstated without violating the double jeopardy clause. *United States v. Rojas*, 554 F.2d 938 (9th Cir. 1977). The *Rojas* case was decided before a series of Supreme Court cases, *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *Sanabria v. United States*, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and it must be decided, therefore, whether those cases overruled *Rojas*. I conclude they did not.

In *United States v. Scott*, the court addressed in footnote 7 the problem we face. Referring to its earlier decision in *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), the Court stated:

In *Jenkins* we had assumed that a judgment of acquittal could be appealed where no retrial would be needed on remand:

"When this principle is applied to the situation where the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict." 420 U.S. at 365, 95 S.Ct. at 1011. Despite the Court's heavy emphasis on the finality of an acquittal in *Martin Linen* and *Sanabria v. United States*, . . . neither decision explicitly repudiates this assumption.

437 U.S. at 91, 98 S.Ct. at 2194–2195, n. 7 (citation omitted). This analysis is consistent with the result our court reached in *Rojas*.

The defendant focuses on language in *Sanabria*, emphasizing the differences between acquittals and dismissals of the indictment. The reference to acquittals in the *Sanabria* case, however, is directed to the instance in which a defendant necessarily must be tried again, by reason of the errors assigned on the prosecution's appeal, because there is no verdict to reinstate. Those considerations are inapposite to the instant case, where there has been a jury verdict which can be reinstated if the prosecution's arguments are accepted. The footnote quoted above from *Scott* is controlling, as is our *Rojas* decision.

Our reversal of the trial court's judgment of acquittal would result in reinstatement of the guilty verdict, subject to the defendant's motion for new trial. The defendant originally moved in the alternative for an order arresting judgment or a new trial. Since the district court granted the motion to arrest judgment, the motion for a new trial became moot. If the trial court's judgment were reversed, that motion would no longer be moot and should be passed on by the district court. Thus, a second trial might be appropriate in this case. If so, however, it would not be ordered as a result of the errors assigned by the prosecution's appeal or as a result of our reversing the judgment of acquittal. The only cause for new trial, if one were granted, would be the defendant's motion for new trial. Where the new trial is granted at the request of the defendant, and there has been no bad faith conduct by the judge or prosecutor, there is no double jeopardy bar. *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Here the defendant might still pursue the motion for a new trial, based, apparently, on his desire to raise the *Clifton* defense. That might be a proper request, but since it would be at his instance double jeopardy concerns are not implicated.

I turn now to the merits of the district court's ruling. As an initial matter, the State argues that the judge lacked jurisdiction to enter a judgment of acquittal because, contrary to the requirements of Rule 29(c), the defendant failed to file a proper motion within seven days of the verdict. At least two circuits have held that unless a timely motion is filed, the judge lacks jurisdiction to enter a judgment of acquittal. *United States v. Johnson*, 487 F.2d 1318,

1321 (5th Cir.), *cert. denied,* 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); *Rowlette v. United States,* 392 F.2d 437, 439 (10th Cir. 1968). *See also United States v. Homer,* 411 F.Supp. 972, 975 (W.D.Pa.), *aff'd on other grounds,* 545 F.2d 864 (3rd Cir. 1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2673, 53 L.Ed.2d 270 (1977). The defendant did file motions for arrest of judgment and for a new trial within the time limits prescribed by Rules 29(c) and 34. The court having retained jurisdiction over the case, I think it had discretion to consider entry of a judgment of acquittal on its own motion, where it was convinced there had been a fundamental error in its instructions, Fed.R. Crim.P. 2.

I conclude further, however, that the trial court misused its discretion in granting judgment of acquittal. The court's ruling was based on the premise that the evidence was insufficient to overcome a defense of immunity under *Clifton v. Cox, supra.* The defense of immunity was not raised or argued at all at trial. The defendant had the burden of raising immunity as an affirmative defense but did not do that. Given the confused state of the evidence, which I discuss further below, this may have been a deliberate trial strategy. In these circumstances the Government cannot be faulted for failing to prove that grounds for immunity were not present. It makes no sense to apply a test of insufficiency of the evidence to a defense not raised at trial and pertaining to a subject that the Government did not have the duty to open. At most, the defendant is entitled to a new trial so that he may have the advantage of the *Clifton* case in preparing his defense.

Moreover, I think the evidence introduced at the first trial may have permitted a reasonable inference that the defendant was not executing his duties in good faith, and therefore that the judgment of acquittal was improper. The defendant's theory was that his gun twice went off by accident and coincidentally hit the victim at a distance of 120 feet. The victim was hit in the back by multiple pellets from at least two shells. Three twelve-gauge shotgun shells were found within eight inches of one another to the right of the trail. All three of them had the smell of fresh powder on them. The defendant had no explanation for the shells being so close together. He testified that the accidental shots were fired about fifteen feet apart. In addition, he originally denied that the victim had been shot. Later he told different versions of what happened, at one point stating that he meant to shoot in front of the victim, and other times stating that he shot the man intentionally because he was uncertain whether his partner was safe. Finally, the defendant testified that when a suspected illegal alien runs back towards the border, as the victim was doing, it is normal procedure to let him go. He gave no explanation why that practice was not followed in this case.

On remand, the district court would have the defendant's motion for a new trial before it. I express no opinion on the propriety of granting this motion as it rests largely with the trial court's discretion. I do note that *Clifton* did not create a new defense. The immunity defense for federal officers has been in existence since *In re Neagle,* 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55 (1890); *Clifton* reaffirmed the existence of federal officer immunity.

I would hold that this court has jurisdiction and reverse and remand.