786 P.2d 1051

**STATE of Arizona, Appellee,**

v.

**Charles VAUGHN, Appellant.**

**No. 1 CA–CR 12303.**

Court of Appeals of Arizona, Division 1, Department D.

Nov. 16, 1989.

As Corrected Dec. 6, 1989.

Review Denied March 6, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div. and Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Garth Nelson, Yuma, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

The defendant was indicted on three counts of child molestation and two counts of furnishing obscene or harmful items to a minor. He failed to appear for his trial and was tried *in absentia*. A directed verdict was granted on one count of child molestation, and the jury found him guilty of two counts of child molestation and two counts of furnishing obscene or harmful items to minors. After the defendant was taken into custody, he was sentenced to presumptive consecutive terms of seventeen years on each count of child molestation and to presumptive terms of four years on each count of furnishing obscene or harmful items to a minor, the latter two counts to run concurrently with the child molestation sentences. From these convictions and sentences, he appeals.

This case was originally presented as an appeal under *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969). In his *Anders* brief, defendant's counsel raises the following arguable issues and requests us to search the record for fundamental error pursuant to A.R.S. section 13–4035:

1. The court lacked jurisdiction by reason of the fact that the offenses alleged occurred on a military reservation;
2. The court erred in denying the defendant's motion to suppress the evidence seized from his motor home;
3. The court erred in proceeding with the trial in the absence of the defendant;
4. The court erred in instructions of law and rulings on evidence during the course of the trial;
5. The defendant received ineffective assistance of counsel prior to and during the trial; and
6. The sentences imposed were excessive.

The appellant also filed a *pro per* supplemental brief which addressed only one issue, the question of exclusive federal jurisdiction over the Yuma Proving Ground. We ordered the state to file an answering brief. We affirm the convictions and sentences imposed.

The facts, taken in the light most favorable to sustaining the verdict, are as follows. Both the defendant and the minor victim, a six-year-old girl, lived in a housing area on the Yuma Proving Ground, a federal military installation, where the appellant was a civilian employee. The defendant showed the victim pornographic films and magazines, and he fondled her on two occasions. All of these incidents took place in the appellant's motor home.

The victim's parents suspected the defendant of molesting their daughter, and when they confronted him, he made some incriminating statements. Soon thereafter, the defendant left Arizona and went to Wisconsin. Some months later, he returned to the Yuma area where he was arrested. While the defendant was in custody, a search warrant was issued for his motor home. Pornographic films and magazines were found in the motor home, some of which were later introduced into evidence at trial.

## JURISDICTION

When the issue of jurisdiction was first raised, we remanded to the trial court for an evidentiary hearing to provide the defendant an opportunity to prove the state's lack of jurisdiction. *See State v. Rodriguez,* 279 S.C. 106, 302 S.E.2d 666 (1983). At that hearing, the defendant was represented by counsel, but was not present in person. Defense counsel advised the court that he had no testimony to offer. The state then produced evidence to show that the Yuma Proving Ground is within the state's jurisdiction. This evidence consisted of military memoranda and correspondence which were attached to the state's memorandum of points and authorities. The prosecutor avowed that they had been received from the Office of the Command Judge Advocate. No other foundation for their admission was laid, but the defense did not object to these exhibits. The trial court ruled that the federal government had not acquired exclusive jurisdiction over the Yuma Proving Ground, so that the

state has the power to prosecute crimes committed there.

■ Generally, a state has complete jurisdiction over the lands within its exterior boundaries. *State v. Manypenny*, 445 F.Supp. 1123 (Ariz.1977), *appeal dismissed*, 608 F.2d 1197 (9th Cir.1979), *reversed on other grounds, Arizona v. Manypenny*, 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981), citing *United States v. McBratney*, 104 U.S. 621, 26 L.Ed. 869 (1881). The burden of showing exclusive federal jurisdiction in a state court prosecution is on the defendant. *State v. Dykes*, 114 Ariz. 592, 562 P.2d 1090 (App.1977). The federal government can acquire exclusive jurisdiction over state land in any one of three ways: (1) by purchase of land from a state, (2) by a cession of jurisdiction to the United States by a state after statehood, or (3) by an affirmation of exclusive jurisdiction to the United States prior to a state's admission to the Union. *Manypenny*, 445 F.Supp. at 1125–26. We need not concern ourselves with acquisition of federal jurisdiction by purchase of the land. Most of the Yuma Proving Ground was acquired by withdrawal from public land and small areas are leased or held by easements or by license.

■ The United States also acquires exclusive jurisdiction over land located within the boundaries of a state to which the United States holds title where there is a cession of jurisdiction by the state *and* an acceptance of jurisdiction by the United States. Prior to 1940, acceptance of ceded jurisdiction was presumed. *United States v. Heard*, 270 F.Supp. 198, 200 (W.D.Mo. 1967). In 1940, Congress amended 40 U.S.C.S. section 255, thereby requiring the United States to formally accept jurisdiction ceded to it by a state. 40 U.S.C.S. § 255 (Supp.1989); *United States v. Johnson*, 426 F.2d 1112 (7th Cir.1970), *cert. denied*, 400 U.S. 842, 91 S.Ct. 86, 27 L.Ed.2d 78 (1970). The defendant suggests that the United States gained exclusive jurisdiction over the Yuma Proving Ground when Arizona ceded jurisdiction to the United States.

■ Shortly after achieving statehood, Arizona enacted a cession statute. Revised Statutes of Arizona Civil Code 1913, ch. 17.[1] Even though the defendant did not address the effect of this statute on federal jurisdiction over the Yuma Proving Ground, we will do so. In *State v. Dykes*, 114 Ariz. 592, 562 P.2d 1090 (App.1977), we stated:

> [T]he 1913 Arizona cession statute was intended to apply only to lands which the federal government used for some specific purpose and for which the federal government derived some benefit from the exercise of exclusive jurisdiction at that time.

*Id.* at 597, 562 P.2d at 1095. Evidence presented to the trial court suggests that the Yuma Proving Ground was not put to any specific use by the United States until 1952 pursuant to Public Land Order 848, 17 Fed.Reg. 6099 (1952). For that reason, the United States would not have acquired exclusive jurisdiction by virtue of the 1913 cession statute.

The defendant, however, relies upon two Arizona statutes enacted in 1951, A.R.S. section 26–251 (Supp.1988) and section 26–252, which cede jurisdiction to the federal government over any public land used for military purposes. Since both of these statutes were enacted after 1940, the federal government would have been required to formally accept jurisdiction before such could have been acquired. 40 U.S.C.S. § 255. No evidence was produced at the evidentiary hearing to show that the federal government had ever formally accepted jurisdiction over the Yuma Proving Ground. Indeed, evidence was produced which indicated that inquiries made by local federal officers in the past suggesting that the federal government accept jurisdiction had been rebuffed by the Command Judge Advocate. Therefore, the federal government does not have exclusive jurisdiction

---

1. This statute was not re-enacted in the 1928 code, and it was effectively repealed in 1981 by Laws 1981, ch. 173, § 5.

over the Yuma Proving Ground under A.R.S. sections 26–251 and 26–252.

Finally, the federal government can obtain exclusive jurisdiction over state land when the state affirms the United States' retention of exclusive jurisdiction at the time a state is admitted into the Union. *Manypenny*, 445 F.Supp. at 1125. The defendant has not claimed that the federal government gained jurisdiction over the Yuma Proving Ground by this means, but to foreclose any doubt on the issue we will address whether Arizona affirmed retention of the United States' exclusive jurisdiction over the Yuma Proving Ground. Section 20 of Arizona's Enabling Act, 36 Stat. 557, 1 A.R.S., and article XX, paragraph Fourth of the Arizona Constitution, 1 A.R.S., disclaim any claim to all land held as public land at the time of statehood. These provisions are merely a disclaimer of the state's proprietary interest, rather than the state's governmental interest, in that land. Section 20, Arizona's Enabling Act, 36 Stat. 557, 1 A.R.S.; Ariz. Const. art. XX, ¶ 4, 1 A.R.S.; *Draper v. United States*, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419 (1896); *Dykes*, 114 Ariz. at 596, 562 P.2d at 1094; *Manypenny*, 445 F.Supp. at 1126. Thus, Arizona did not affirm retention of the United States' exclusive jurisdiction over the Yuma Proving Ground.

## MOTION TO SUPPRESS

 The defendant suggests that the trial court erred in denying his motion to suppress the pornographic materials seized from his motor home. The search warrant recited the year, make and model of the vehicle as well as its last known license plate number, and the items to be seized, including pornographic materials. Although the motor home's vehicle identification number was not included in the search warrant, one of the officers obtained the number and used it at the time of the search to further identify the vehicle. As it turns out, the defendant had affixed new license plates to the vehicle after he left Arizona. The record indicates that the affidavit supporting the search warrant was supported by probable cause. *State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670,

81 L.Ed.2d 375 (1984). The inaccurate license plate number described in the warrant is inconsequential since the other descriptions of the vehicle, including the vehicle identification number, gave the officer who executed the warrant sufficient information to accurately identify the vehicle to be searched. A search is proper under a valid search warrant even though the police had unlawfully "secured" the vehicle prior to obtaining the search warrant. *State v. Smith*, 112 Ariz. 531, 544 P.2d 213 (1975). Consequently, the fact that the police impounded the vehicle after obtaining the search warrant but before executing it will not invalidate the warrant. The trial court did not err in denying the motion to suppress.

## TRIAL IN ABSENTIA

 Counsel alleges that the court erred in proceeding with the trial in the absence of the defendant. Prior to his arraignment, the defendant received written notice that the trial court would proceed in his absence if he failed to appear. He signed two determination of release conditions and release orders which stated that if he failed to appear for trial, the trial would be held in his absence. The defendant was also present when the trial judge originally set the matter for trial.

The court may infer that an absence is voluntary if the defendant had personal notice of the time of the proceeding, his right to be present at the proceeding, and a warning that the proceeding would go forward in his absence should he fail to appear. Rule 9.1, Arizona Rules of Criminal Procedure, 17 A.R.S. Written notice that the trial will proceed without the defendant is sufficient warning. *State v. Pena*, 25 Ariz.App. 80, 541 P.2d 406 (1975). The trial court also made a finding on the record at the time of trial that the defendant had voluntarily absented himself, though such finding is not required. *State v. Suniga*, 145 Ariz. 389, 701 P.2d 1197 (App.1985). The trial court did not err in trying the defendant *in absentia*.

## INSTRUCTIONS AND EVIDENCE

The defendant raises an arguable issue as to the instructions given at trial and the

rulings on evidence made during the course of the trial. He provides no examples of the instructions he feels were erroneous nor does he specify which evidentiary rulings were incorrect.

At trial, defendant's counsel objected to two proposed instructions. The trial judge granted both objections and did not give the two instructions. As to the remainder of the instructions, defendant's counsel made no further objections and no fundamental error appears from the record.

During the course of the trial, defendant's counsel objected to two major items of proof: the testimony of another child who had been molested by the defendant and the doctor who examined the victim. The trial judge properly admitted this testimony to show an emotional propensity for sexual aberration on the part of the defendant. *State v. McFarlin,* 110 Ariz. 225, 517 P.2d 87 (1973).

The trial judge also admitted the video deposition of the doctor who testified that the victim's hymen had been damaged. Prior to trial, both parties were aware that Dr. Cady would be on vacation at the time the trial was scheduled. The court granted the prosecution's motion for permission to take Dr. Cady's testimony by video deposition. At trial, the state moved to admit Dr. Cady's video deposition on the basis that Dr. Cady was unavailable. Over defense counsel's objection, the trial judge ruled that the video deposition could be entered into evidence.

The trial judge did not err by admitting the video deposition. The admission of video deposition evidence of an expert witness who is on vacation is permissible. *State v. Reid,* 114 Ariz. 16, 559 P.2d 136 (1976), *cert. denied,* 431 U.S. 921, 97 S.Ct. 2191, 53 L.Ed.2d 234 (1977). The doctor's statement was taken under oath and he was subject to cross-examination.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant also asserts that his trial counsel was ineffective, but fails to specify any particular deficiency in his representation. To demonstrate ineffective assistance of counsel, petitioner must show that his counsel's actions were unreasonable under prevailing professional norms and that there is a reasonable probability of a different result. *State v. Nash,* 143 Ariz. 392, 694 P.2d 222, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); *State v. Lee,* 142 Ariz. 210, 689 P.2d 153 (1984). In order to show that counsel's performance was deficient, a defendant must overcome a presumption that the challenged action was sound trial strategy under the circumstances. *State v. Santanna,* 153 Ariz. 147, 735 P.2d 757 (1987). Defendant's counsel was present for all court proceedings, made appropriate pretrial motions, cross-examined the witnesses against the defendant, called witnesses in defendant's defense, and gave a closing argument at the trial. Counsel also argued for a mitigated sentence at sentencing. The burden of establishing ineffective assistance of counsel is on the defendant, and proof of ineffectiveness of counsel must be a demonstrable reality rather than a matter of speculation. *State v. Meeker,* 143 Ariz. 256, 693 P.2d 911 (1984). No valid claim of ineffective assistance of counsel appears from the unsupplemented record on appeal.

## SENTENCE

Lastly, the defendant claims the sentences imposed by the court were excessive. He was sentenced to the presumptive sentence on all four convictions. The imposition of a sentence within the statutory limits will not be modified on review absent an abuse of discretion of the trial judge. *State v. Fatty,* 150 Ariz. 587, 724 P.2d 1256 (App.1986). No abuse of discretion appears on the record before this court; therefore, we find no error in the sentences imposed.

For the foregoing reasons, the convictions and sentences are affirmed.

GRANT, C.J., and FIDEL, J., concur.