799 P.2d 19

**STATE of Arizona, Appellee,**

v.

**Jose Manuel GALVAN–CARDENAS, Pedro Angel Mendez, and Jorge Armando Romero Morales, Appellants.**

**Nos. 2 CA–CR 89–0376, 2 CA–CR 89–0388 and 2 CA–CR 89–0419.**

Court of Appeals of Arizona, Division 2, Department A.

May 15, 1990.

Review Denied Oct. 23, 1990.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Crane McClennen, Phoenix, for appellee.

Perry L. Hicks, Bisbee, for appellant Galvan–Cardenas.

Robert Arentz, Cochise County Public Defender by James L. Conlogue and Benna R. Troup, Bisbee, for appellants Mendez and Morales.

Stephen M. McNamee, U.S. Atty. by Gary Clifford Korn, Tucson, and U.S. Dept. of Justice by Kathleen A. Felton, Washington, D.C., for amicus curiae, U.S.

Arthur C. Atonna, Douglas, for amicus curiae, City of Douglas.

## OPINION

ROLL, Presiding Judge.

Jose Manuel Galvan–Cardenas, Pedro Angel Mendez, and Jorge Armando Romero Morales appeal their respective convictions arising from three unrelated incidents. All three defendants in this consolidated appeal argue that the state lacked jurisdiction to prosecute them because they were arrested at the Douglas, Arizona port of entry. Because we conclude that the state has jurisdiction concurrent with the federal government, we affirm.

## FACTS

On February 10, 1989, Pedro Angel Mendez was arrested at the Douglas, Arizona port of entry after entering the United

States from Agua Prieta, Mexico, with 47 pounds of marijuana behind a trap door in the gas tank of the vehicle he was driving.

On March 3, 1989, Jorge Morales was a passenger in a vehicle searched at the same port of entry following entry into the United States from Agua Prieta. Customs officials discovered .43 grams of cocaine in a pack of cigarettes in Morales' possession.

On March 21, 1989, Jose Manuel Galvan–Cardenas was arrested at this port of entry after 139 pounds of marijuana was discovered in false compartments of the vehicle in which he was a passenger.

When each defendant first crossed the international boundary, they proceeded over a 60–foot–wide strip of boundary commission land, a 36–foot, five–inch roadway, and then entered the land upon which the Douglas port of entry is operated.

The area between the international boundary and the port of entry consists of a pedestrian walkway and paved lanes leading to the inspection areas of the port of entry. The paved lanes are one–way, and are bordered by a wire fence and other structures, preventing individuals from leaving the clearly–defined approachway. The port of entry was purchased by the United States in 1931 and no state taxes are paid in connection with this property.

## PROCEDURAL BACKGROUND

Mendez and Morales filed pretrial motions to dismiss for lack of jurisdiction. These motions were denied, with the trial court deferring to the appellate court. Thereafter, Mendez entered pleas of guilty to second degree escape and no-contest to attempt to transport marijuana for sale. Mendez received respective sentences of two years' and five years' imprisonment, to run concurrently. Morales was found guilty of possession of cocaine after guilt was submitted to the trial court. Morales was placed on four years' probation. Galvan–Cardenas entered a plea of guilty to attempt to import marijuana and was sentenced to a mitigated term of 3.75 years.

## ISSUES ON APPEAL

On appeal, all three defendants argue that the state lacks jurisdiction to prosecute them for their respective alleged violations of state law. Each defendant maintains that the federal government has exclusive jurisdiction over the land on which the alleged offenses occurred. In addition, Galvan–Cardenas and Mendez argue that they were impermissibly denied admission to the intensive probation supervision program.

### Jurisdiction

All defendants argue that the United States has exclusive jurisdiction over the Douglas port of entry and all land leading to the port of entry from the international boundary.

■ Whether the State of Arizona has jurisdiction concurrent with the United States over federal lands situated within the State of Arizona is a mixed question of fact and law and is reviewed *de novo. Tovrea Land & Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966). "The burden of showing exclusive federal jurisdiction in a state court prosecution is on the defendant." *State v. Vaughn,* 163 Ariz. 200, 203, 786 P.2d 1051, 1054 (App.1989).

■ Generally, a state has complete jurisdiction over the lands within its exterior boundaries. *Id.* There are three methods by which the United States can obtain exclusive jurisdiction over federal land within a state: (1) by reservation of exclusive federal jurisdiction upon the admission of a state into the Union with affirmation by the state; (2) by a state statute consenting to the purchase of land by the United States for one or more of the purposes enumerated in article 1, § 8, clause 17 of the United States Constitution; and (3) by a cession of jurisdiction to the United States by an individual state after statehood. *Arizona v. Manypenny,* 445 F.Supp. 1123, 1125–26 (D.Ariz.1977), *appeal dismissed,* 608 F.2d 1197 (9th Cir.1979), *rev'd on other grounds,* 451 U.S. 232, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981); *Vaughn, supra.* The

defendants have failed to establish that any one of these three modes of jurisdictional transfer is applicable to the boundary commission land or the roadway.

■ The boundary commission land was reserved to the United States in 1907. Proclamation of May 27, 1907, 35 Stat. 2136–37 (1907–09). When Arizona was admitted to the Union, the United States did not retain exclusive jurisdiction over the boundary commission land. Act of June 10, 1910, 36 Stat. 557. Accordingly, Arizona and the United States have concurrent jurisdiction over this strip of land.

■ The roadway, lying between the port of entry and the boundary land, is owned by the City of Douglas. The United States has an easement over the land for the construction and maintenance of a bridge. This easement does not divest the City of Douglas and the State of Arizona of jurisdiction. The state has not consented to the purchase of the land nor has the state ceded jurisdiction to the United States; therefore the United States has not obtained exclusive jurisdiction over this roadway.

■ The Douglas port of entry is a class A port of entry designated for entry of all aliens. 8 C.F.R. § 100.4(c)(2). It is therefore an immigration station within the meaning of 8 U.S.C. § 1358, which provides:

> The officers in charge of the various immigrant stations shall admit therein the proper State and local officers charged with the enforcement of the laws of the State or Territory of the United States in which any such immigrant station is located in order that such State and local officers may preserve the peace and make arrests for crimes under the laws of the States and Territories. For the purpose of this section the jurisdiction of such State and local officers and of the State and local courts shall extend over such immigrant stations.

This statute has been construed as creating concurrent jurisdiction over state crimes that occur within federal immigration stations and border stations. *State v. Arm-strong*, 148 Vt. 344, 346, 533 A.2d 1183, 1185 (1987); *State v. Bradley*, 105 Wash.2d 898, 901, 719 P.2d 546, 548 (1986). *See also State v. Allard*, 313 A.2d 439, 450 n. 16 (Me.1973). The State of Arizona has concurrent jurisdiction over the Douglas port of entry. Accordingly, the trial court did not err in denying the respective defendants' motions to dismiss.

### Failure to Admit Galvan–Cardenas and Mendez to the Intensive Probation Supervision Program

■ The probation department is under a statutory duty to consider the appropriateness of the intensive probation supervision program for all offenders, provided probation is not prohibited by law. A.R.S. § 13–914. This statute requires that every presentence report contain an evaluation of an offender for possible inclusion in the intensive probation supervision program. *See also State v. Brooks*, 156 Ariz. 529, 753 P.2d 1185 (App.1988). Our standard of review on this issue requires that we defer to the trial court absent an abuse of discretion. *State v. Mincey*, 141 Ariz. 425, 445, 687 P.2d 1180, 1200, *cert. denied*, 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984).

■ The state maintains that the record does not reflect that Galvan–Cardenas was denied consideration for the intensive probation supervision program. Furthermore, the state points out that Galvan–Cardenas made no objection to not being included in the program. This court will not consider an issue on appeal which has not first been presented to the trial court. *State v. Acree*, 121 Ariz. 94, 98, 588 P.2d 836, 840 (1978). Accordingly, we find no error as to Galvan–Cardenas.

■ The record reflects that Mendez was considered for the intensive probation supervision program. However, one criteria of the program is the establishment of a place of residence approved by the intensive probation team. A.R.S. § 13–914(E)(3). At sentencing, the trial court pointed out that the probation department did not have an intensive probation team in the area of Mendez's California residence.

Finally, the state also points out that the trial court found no mitigating or aggravating factors. Accordingly, since the presumptive sentences involved incarceration, probation was unavailable.

We have searched the record for fundamental error and have found none. For the reasons set forth above, we affirm.

HOWARD and HATHAWAY, JJ., concur.