901 P.2d 1169

**STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, The Honorable Thomas W. O'Toole, a judge thereof, Respondent Judge,**

**Alvaro Humberto OCHOA, Real Party in Interest.**

**No. 1 CA–SA 94–0245.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 17, 1995.

Reconsideration Denied March 7, 1995.

Review Denied Sept. 12, 1995.

---

Grant Woods, Arizona Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Richard M. Romley, Maricopa County Atty. by Arthur Hazelton, Deputy County Atty., Phoenix, for petitioner.

Law Offices of Nash & Jones, P.C. by Walter B. Nash III, Tucson, and Michael R. McDonnell, La Habra, CA, for real party in interest.

## OPINION

JACOBSON, Presiding Judge.

The state petitions for special action review of Judge O'Toole's order denying the state's motion to conduct defendant's criminal trial *in absentia*, contrary to a prior ruling by Judge Galati granting the state's motion to try defendant *in absentia* pursuant to Rule 9.1, Arizona Rules of Criminal Procedure. The issues presented are (1) whether Judge O'Toole abused his discretion in reconsidering and vacating Judge Galati's prior ruling that defendant could be tried *in absentia* after his escape from pretrial incarceration, and (2) whether Judge O'Toole correctly ruled that no trial *in absentia* could be held because defendant did not receive actual notice of the new trial date.

■ The state contends, and defendant agrees, that this case involves an interlocutory order from which the state has no right of appeal under A.R.S. § 13–4032. It is therefore appropriately challenged by special action. *See generally* Rules 1 and 3, Arizona Rules of Procedure for Special Actions. In the exercise of our discretion, we therefore accept special action jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 1993, Real Party in Interest Alvaro Humberto Ochoa (defendant) was indicted on seven drug-related counts involving his possession of approximately 627 kilograms of cocaine. After his arrest, he was incarcerated in the Maricopa County Madison Street Jail. On September 7, 1993, defendant appeared with counsel at his arraign-

ment, and was advised of a trial date of November 22, 1993. The minute entry from that proceeding stated the following:

NOTICE TO DEFENDANTS:

. . . . .

The Defendant may be tried in his/her absence if he/she fails to appear for trial.

Copies of this minute order and a case status report form are given to all parties this date.

On February 7, 1994, while defendant was still in custody, the court ruled on defendant's motion to continue the trial date. By minute entry only, and without defendant's presence, the trial court vacated a subsequent trial date of February 28, 1994, and reset trial for April 19, 1994, at 10:30 a.m. The parties agree that the record contains no evidence that defendant received any actual notice of this new trial date.[1]

On March 12, 1994, defendant and three other inmates escaped from the Madison Street Jail by sawing through a metal window frame to gain access to the roof of the jail, and then rappeling down five stories, leaving mountaineering equipment hanging from the side of the building. To date, defendant has not been recaptured.

The parties appear to agree that, because defendant is a native and citizen of Colombia with family presently living there, and because he is facing trial here on charges with potentially long sentences, he has most likely left this jurisdiction and returned home. Defense counsel admits, "Mr. Ochoa is a fugitive probably in Colombia and most likely never to return or be returned to the United States."

After the escape, and on the date set for trial, the state filed a motion to try defendant *in absentia*, arguing that "[t]he fact of his escape from jail is sufficient to show he voluntarily absented himself," despite the fact that defendant had not been advised of his new trial date before his escape. Defense counsel argued that defendant's lack of notice precluded a trial *in absentia*. On May

13, 1994, Judge Galati made findings that (1) defendant did not receive personal notice of the April 19, 1994, trial date because, by agreement of counsel, that date was set by minute entry only; (2) the other Rule 9.1 factors to infer voluntary absence are present on the record; and (3) defendant escaped on March 12, 1994. Based on those findings, Judge Galati ruled as follows:

The court finds that despite the lack of personal notice to defendant of the April 19, 1994 trial date, the circumstances cited in paragraphs 2 and 3 above clearly and unequivocally demonstrate that defendant Ochoa has no intention of appearing for trial in this case on whatever day it is set. If he wants to know the trial date, all he need do is telephone his lawyer.

For these reasons, IT IS ORDERED granting the State's motion to continue the April 19, 1994 trial date and IT IS FURTHER ORDERED granting the state's motion to try defendant Ochoa *in absentia*.

The order also noted that Judges Galati and O'Toole were scheduled to exchange calendars on June 13, 1994, and set a status conference for June 17, "at which time a firm trial date will be set."

On June 14, 1994, defense counsel filed a "Motion re: Trial of Defendant In Absentia," arguing the same issues of fact and law as were before Judge Galati, and which Judge O'Toole considered as a motion for reconsideration of Judge Galati's ruling. The state responded with a short statement that, because no new facts or issues had been raised, the trial court "should be loath to revisit the issue."

On June 28, at a hearing on the motion, after the state again conceded a lack of evidence of defendant's personal knowledge of the April 19 trial date, Judge O'Toole indicated he was inclined to grant the defense motion because:

I think the requirements of Rule 9.1 and

---

1. Defendant apparently had notice of other continued trial dates. The parties do not allege that he lacked actual notice of any prior continued

trial dates other than the April 19, 1994, date (after his escape) that was set by minute entry on February 7, 1994 (before his escape).

the Tugboat[2] [sic] case require that all three elements be evident.

... Unless I'm missing something, I think Judge Galati made a mistake in reaching the conclusion that he can be tried in absentia.

... I don't disagree with Judge Galati's finding he voluntarily absented himself, but you still have to show when he did that he had notice of the April 19th trial date, and I don't think that is supported by the record.

Accordingly, Judge O'Toole vacated a portion of Judge Galati's prior order to try defendant *in absentia* as "contrary to Rule 9.1 and existing case law and the facts." The state then petitioned this court for special action relief.

## DISCUSSION

### 1. Did Judge O'Toole have discretion to overrule Judge Galati?

■ Rule 16.1(d), Arizona Rules of Criminal Procedure, provides that, "[e]xcept for good cause, or as otherwise provided in these rules, an issue previously determined by the court shall not be reconsidered." Additionally, superior court judges generally follow a policy of avoiding "horizontal appeals" in reviewing another superior court judge's ruling in the same case. *See, e.g., Smoole v. Maricopa County*, 177 Ariz. 185, 186, 866 P.2d 167, 168 (Tax 1993) (reviewing what another judge has done is "frowned upon" and is appropriate only in limited circumstances). If no new circumstances have arisen, a second trial judge should not review the ruling of the first judge; such a practice wastes judicial resources and encourages "judge shopping." *Hibbs v. Calcot, Ltd.*, 166 Ariz. 210, 214, 801 P.2d 445, 449 (App.1990).

■ In this case, it appears from the procedural history set forth by the parties, that Judge Galati and Judge O'Toole exchanged calendars on June 13, 1994. As a result, and according to a minute entry dated June 6, 1994, which is not included in the record before us, Judge Galati either ruled that all *pending* motions would be reset before Judge O'Toole for additional argument and hearing, or that ruling constituted "a mandate to reschedule new argument on a number of already-argued motions, to make his own rulings thereon, to set the trial date, and to handle all further aspects of the case." In either event, the changing of calendars would not affect the requirement of Rule 16.1 that prior rulings be reconsidered only upon a showing of good cause. The state contends that defendant did not establish such good cause, and Judge O'Toole therefore abused his discretion in granting the motion for reconsideration of Judge Galati's ruling.

Defendant argues that the "good cause" was Judge Galati's error of law in ruling that trial *in absentia* could proceed even in the absence of defendant's actual notice of his continued trial date. *See generally State v. Baca*, 172 Ariz. 1, 2, 832 P.2d 933, 934 (App. 1992) (second judge's reconsideration of motion to dismiss was supported by Rule 16.1 "good cause" because first judge's ruling was based on incorrect statutory basis and state's incorrect factual representations). We therefore look to the merits of the original ruling to determine if such good cause supported Judge O'Toole's order.

### 2. Did Judge O'Toole erroneously deny a trial in absentia?

■ Rule 9.1, Arizona Rules of Criminal Procedure, provides as follows:

#### Defendant's Waiver of Right to Be Present

Except as otherwise provided in these rules, a defendant may waive the right to be present at any proceeding by voluntarily absenting himself or herself from it. *The court may infer that an absence is voluntary if the defendant had personal notice of the time of the proceeding, the right to be present at it, and a warning that the proceeding would go forward in*

---

**2.** The parties agree that reference to the "Tugboat" case refers to *State v. Tudgay*, 128 Ariz. 1,

623 P.2d 360 (1981), discussed *infra*.

*his or her absence should he or she fail to appear.*

(Emphasis added.)

Defendant argues that the law is well-settled that, in order to make a finding of voluntary absence to support a trial *in absentia*, the court must find evidence of all three factors set forth in Rule 9.1: (1) that defendant had personal notice of the trial date and time; (2) that he was aware of his right to be present; and (3) that he was warned of the consequences of trial *in absentia* if he failed to appear. In support of this proposition, defendant relies primarily on three cases in which trial *in absentia* was affirmed in the presence of all three factors. *See State v. Tudgay,* 128 Ariz. 1, 623 P.2d 360 (1981); *State v. Vaughn,* 163 Ariz. 200, 786 P.2d 1051 (App.1989); and *State v. Suniga,* 145 Ariz. 389, 701 P.2d 1197 (App.1985).

The state argues that these cases merely affirm that a finding of voluntary absence is warranted when those factors are present. The state contends that, although the first Rule 9.1 factor—defendant's personal notice of the date of trial—is missing from the record in this case, because the other two factors are present and because the significance of defendant's escape is great under the factual circumstances of this case, Judge Galati could correctly find the necessary inference of defendant's voluntary absence to proceed with trial *in absentia.*

In *State v. Tudgay,* our supreme court found that all three elements of Rule 9.1 had been met to infer a voluntary absence constituting a waiver of defendant's presence when his jury was empaneled. The court found that defendant's personal notice was evidenced by his counsel's mailing of the minute entry to defendant's girlfriend in the same manner other notices of proceedings had been received. 128 Ariz. at 2–3, 623 P.2d at 361–62. In *dictum,* however, the court noted that, even if defendant had never received notice of the continued trial date, it was his duty, under the conditions of his release, to maintain contact with his attorney as to any changes in the trial date. *Id.* at 3, 623 P.2d

at 362. In this case, however, defendant's release conditions did not state such a duty, and the state does not contend that defendant was orally informed of such a duty to stay informed through counsel at any prior hearing at which he was present. In any event, defendant was not lawfully "released."

In *State v. Suniga,* this court found that, where defense counsel had telephoned defendant and told him his trial was scheduled for "Tuesday," but defendant did not appear, defense counsel had no explanation for his absence, the evidence supported the trial court's inference under Rule 9.1 that defendant's absence was voluntary despite defendant's contention on appeal he had no "actual notice" of the date of the trial. 145 Ariz. at 392, 701 P.2d at 1200.

In *State v. Vaughn,* the defendant had been present when the trial court originally set the matter for trial, and had received written notice in his release conditions that he had a right to be present at trial and a warning that trial would proceed in his absence.[3] This court held that those circumstances were sufficient to support an inference of voluntary absence under Rule 9.1.

None of the above-cited cases, however, held that, as a matter of law, the absence of any of the three factors in Rule 9.1 would prevent an inference of voluntary absence to support a trial *in absentia.* Indeed, the state points to case law that appears to hold that, under certain circumstances, actual notice of a continued trial date is not a requisite to a finding of voluntary absence. *See State v. Cook,* 115 Ariz. 146, 564 P.2d 97 (App.1977) (*"Cook I "*), *supplemented,* 118 Ariz. 154, 575 P.2d 353 (App.1978) (*"Cook II "*), and *overruled in part ·on other grounds, State v. Fettis,* 136 Ariz. 58, 59, 664 P.2d 208, 209 (1983); *see also State v. Pena,* 25 Ariz.App. 80, 81–82, 541 P.2d 406, 407–08 (1975), quoted in *Tudgay,* 128 Ariz. at 3, 623 P.2d at 362 ("There is no requirement that a defendant receive notice of his rights after every continuance").

---

3. In this case, defendant Ochoa received the identical written warnings in his release conditions that he had a right to be present at trial and a warning that trial would proceed without him in his absence. *See generally* Form VI, Arizona Rules of Criminal Procedure.

Additionally, we have found federal cases in which voluntary absence has been inferred to support a waiver of the right to be present at trial under circumstances that did not include a defendant's knowledge of the actual trial date. *See, e.g., Brewer v. Raines,* 670 F.2d 117, 119 (9th Cir.1982) (notice of original trial date and warning that trial could be held *in absentia* was sufficient to infer knowing waiver of right to be present despite defendant's failure to know of continued date of his trial); *United States v. Mera,* 921 F.2d 18, 20 (2d Cir.1990) (conviction of narcotics conspiracy affirmed where defendant, after arraignment and unsuccessful attempt to reduce bail, fled and did not reappear; waiver of right to be present was found knowing and voluntary regardless whether he knew of trial date); *see generally* H.S. Boreman, Jr., Annotation, *Sufficiency of Showing Defendant's "Voluntary Absence" from Trial for Purposes of Criminal Procedure Rule 43, Authorizing Continuance of Trial Notwithstanding Such Absence,* 21 A.L.R.Fed. 906 (1974).

In *Cook I,* the defendant, as in this case, was present at his arraignment, entered a plea of not guilty, was aware from information in the release order that he had a right to be present, and was warned that trial would go forward without him if he failed to appear. As here, Cook received actual notice at that time of the original trial date. However, unlike in this case where defendant could not post bail and was incarcerated, Cook was released on his own recognizance after signing the acknowledgement on the release order. One day before the scheduled trial, in response to a codefendant's motion to continue, the court continued the trial date. Cook was not present when the trial date was reset and it was "questionable" whether he had notice of that date. Cook's counsel obtained another continuance when he could not locate Cook. When he did not appear on the new trial date, the trial court found that he had waived his presence at trial by his voluntary absence. On appeal, this court found the record insufficient to support that finding, and remanded the matter for an evidentiary hearing to determine the reasons for Cook's absence at trial. 115 Ariz. at 150, 564 P.2d at 101. In considering defendant's

Rule 9.1 argument, however, the court stated:

We are not persuaded this rule requires actual notice of the time of a proceeding as a prerequisite to inferring an accused's absence is voluntary. The pivotal question is whether the defendant waived his right to be present by his voluntary absence and Rule 9.1 merely suggests one combination of factors which may support an inference of voluntariness. Thus, an accused who does not know of and fails to appear at a proceeding against him may be found to have waived his right to be present there if the record indicates criminal proceedings commenced in his presence, that he absconded knowing of his right to attend future proceedings, and that his disappearance has made it impossible to contact him with reference to these proceedings.

*Id.* at 149, 564 P.2d at 100.

On appeal after remand, this court again pointed out that Cook had actual notice of the original trial date, and found that the following new evidence supported the trial court's finding of voluntary absence from trial under Rule 9.1: Cook did not show up at the courthouse on the day originally set for trial, had made no efforts to maintain contact with his attorney after the arraignment, and had avoided counsel's effort to apprise him of the new date of trial. *Cook II,* 118 Ariz. at 155, 575 P.2d at 354. Thus, *Cook* supports a contention that it is possible for a defendant to voluntarily absent himself from trial even without actual notice of the continued trial date, under circumstances that indicate he would not appear even if he had known the new trial date.

Those circumstances are even more compelling on this record than they were in *Cook.* As in *Cook,* the record supports two of the three factors enunciated in Rule 9.1: defendant was aware of his right to be present at trial from the signed acknowledgement on his release order, and he was warned at his arraignment of the consequences of being tried *in absentia* should he fail to appear. He had actual notice of the original trial date, but escaped before he was advised of the continued trial date. He has not contacted

his attorney in the six months following his escape to learn either the trial date or the result of his trial *in absentia.*

One difference between this case and *Cook I* regarding the actual notice issue, however, involves the fact that, although Cook was on release and did not show up on a trial date, he might have attended had he actually known of the continuance. Thus, a remand for an evidentiary hearing on the question of Cook's reasons for failing to appear at trial was necessary. Here, however, defendant escaped from pretrial incarceration with no evidence to support an inference that he might have returned on April 19th had he known of that trial date. The fact that law enforcement officials who have investigated the escape have concluded that defendant in all likelihood has left the court's jurisdiction to return to his native country is also strong evidence to support an inference of his voluntary absence from trial. Furthermore, another compelling factor in this case is that the reason for the court's continuance to a date defendant was not yet aware of when he escaped was a result of his own counsel's motion, rather than circumstances that defendant could not foresee. All these factors point to a compelling conclusion that, on the date of his escape, it hardly mattered to this defendant whether his trial was set for a few days or a few months away; the fact of his escape itself provided evidence of his intent not to appear at trial no matter when it was held. This supports an inference of voluntary absence from trial. As the United States Supreme Court has observed:

> "Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted an escape from prison, or an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield [from prosecution]."

*Diaz v. United States,* 223 U.S. 442, 458, 32 S.Ct. 250, 56 L.Ed. 500 (1912), *quoting Falk v. United States,* 15 App.D.C. 446, 460–61 (1899); *see also Golden v. Newsome,* 755 F.2d 1478, 1481 (11th Cir.1985) (defendant who escapes from custody during trial volun-tarily absents himself and thereby waives right to be present during rest of trial).

Under these particular circumstances, we conclude that it was within Judge Galati's discretion to find that defendant had voluntarily absented himself within the meaning of Rule 9.1 to effectively waive his right to be present at trial, thus warranting his trial *in absentia.* We also conclude this ruling was reasonably supported by both the facts of this case and existing case law. For that reason, it constituted an abuse of discretion for Judge O'Toole to vacate that order on defendant's motion for reconsideration.

For the foregoing reasons, we accept jurisdiction and grant relief. Judge O'Toole's order granting defendant's motion to vacate the trial *in absentia* is vacated, and Judge Galati's order granting the state's motion to proceed to trial *in absentia* is reinstated.

CONTRERAS and TOCI, JJ., concur.