118 P.3d 639

**STATE of Arizona, ex rel Andrew P. THOMAS, Maricopa County Attorney, Petitioner,**

v.

**The Honorable Craig BLAKEY, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Juan Luis Lugo, Real Party in Interest.**

No. 1 CA–SA 05–0124.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 1, 2005.

Andrew P. Thomas, Maricopa County Attorney By Diane Gunnels Rowley, Deputy County Attorney, Phoenix, Attorneys for Petitioner.

Humberto Rosales, Phoenix, Attorneys for Real Party in Interest.

## OPINION

SNOW, Judge.

¶ 1 The State petitions for special action review of the superior court's determination that real party in interest, defendant Juan Lugo, may not be tried in absentia pursuant to Arizona Rule of Criminal Procedure 9.1. For the following reasons, we accept jurisdiction and grant relief.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On August 25, 2004, Phoenix police received information from an anonymous source that 500 pounds of marijuana was located in an apartment at 1329 E. Cinnabar. The officers who responded to the call could smell marijuana through the door of the apartment. After knocking on the door and receiving no answer, but hearing sounds of "people moving around inside" and of something heavy being dropped, the officers kicked in the door. Inside the apartment, the officers found Lugo along with 450 pounds of marijuana, more than a half-pound of cocaine, an assault rifle, a Browning bolt action rifle, a semi-automatic handgun, a Remington marlin rifle, and a Colt revolver. In addition, the officers found passports with Lugo's name hidden under a rug, "car titles, Mexican documents, miscellaneous tax paperwork, and DEA seizure paperwork related to another incident."

¶ 3 On September 10, 2004, Lugo was indicted for possession of marijuana for sale, possession of narcotic drugs for sale, and misconduct involving weapons. Bond was set at $100,000. Lugo filed a motion with the court to be released on his own recognizance before trial. The State, in opposing this motion, responded that Lugo was an undocumented alien who had only been in the United States for eight days when he was arrest-

ed, and he had no family in Arizona. The State argued that "[t]he amount of drugs, the paperwork, the deadly guns, and his confession will prove beyond all doubt that [Lugo] is guilty of the crimes charged." It further argued that Lugo was part of a major drug trafficking effort and that his particular crime was dangerous to the community. Additionally, the State noted that "it may not take long for the members of [Lugo's] organization to raise the funds necessary to bail [Lugo] out [of jail] so he can return to Mexico and eventually resume his deadly business." In its motion, the State also asserted:

> The State also wishes to declare its intention at this early stage that if [Lugo] is bonded out, and fails to appear at any hearing, the State will seek to proceed in absencia [sic]. At the next hearing, the State requests that the Court advise the Defendant pursuant to Rule 9.1 of his rights and his obligation to stay in contact with his attorney if released.

¶ 4 At a hearing to reduce his bail, Lugo was given and acknowledged receiving in writing a warning that his failure to appear at pretrial conference or at trial would allow the State to try him in absentia. After the court reduced his bail from $100,000 to $20,000, bail was posted and Lugo was released into the custody of INS. While in INS custody, Lugo requested and was granted voluntary departure to Mexico.

¶ 5 Lugo did not appear on the date of the pretrial conference. A warrant was issued for his arrest, and the State filed a motion to proceed in Lugo's absence. The court found that Lugo was "granted voluntary departure to Mexico" and had "not shown for any [c]ourt conference since." Thus, the court ordered that Lugo be tried in absentia.

¶ 6 The following day, the court issued a second minute entry amending its findings and changing its previous order. The court denied the State's motion to proceed in absentia "because the departure is not truly 'voluntary' and no proof was offered that [Lugo] was aware of his new trial date."

¶ 7 The court's characterization of the INS regulations pursuant to which Lugo requested and received voluntary departure is erroneous. Pursuant to INS regulation there are

realistic alternatives to a voluntary departure, which may be requested. Further, Lugo's voluntary departure to Mexico did not prevent him from keeping in touch with his attorney or attempting to return for trial. We further conclude, under the circumstances, that Lugo's potential ignorance of his trial date did not make his absence from trial involuntary. We also reject Lugo's arguments, asserted for the first time on special action, that Lugo did not receive sufficient notice of the conditions of his release. We thus accept jurisdiction and remand with instructions to the superior court to permit the trial of Lugo in absentia.

## DISCUSSION

### A. Jurisdiction

¶ 8 Special action jurisdiction is appropriate where there is no equally plain, speedy, and adequate remedy by appeal. Ariz. R.P. Spec. Act. 1(a). The decision to accept jurisdiction is largely discretionary and should be reserved for "extraordinary circumstances." *State ex rel. Romley v. Fields*, 201 Ariz. 321, 323, ¶ 4, 35 P.3d 82, 84 (App.2001) (citations omitted).

¶ 9 The State contends, and the defendant agrees, that this case involves an interlocutory order from which the State has no right of appeal. It is therefore appropriately challenged by special action. *See* Ariz. Const. art. 6, §§ 5, 9; Ariz. R.P. Spec. Act. 1, 3, 4, 7; *State ex rel. Romley v. Superior Court*, 183 Ariz. 139, 140, 901 P.2d 1169, 1170 (App.1995).

### B. Merits

¶ 10 The trial court made a finding that Lugo's absence pursuant to the INS voluntary departure procedure was "not truly voluntary" and therefore, based on that finding, Lugo could not be tried in absentia. That finding was error. We review the denial of the motion for an abuse of discretion. *McElhanon v. Hing*, 151 Ariz. 403, 410, 728 P.2d 273, 280 (1986) (citations omitted). "An abuse of discretion exists when the trial court commits an error of law in the process of exercising its discretion." *Fuentes v.*

*Fuentes,* 209 Ariz. 51, 56, ¶ 23, 97 P.3d 876, 881 (App.2004) (citations omitted).

¶ 11 After the indictment Lugo was released on bond into INS custody. In such circumstances the law gives Lugo the option of requesting political asylum, 8 U.S.C.A. § 1158 (2002), requesting a hearing before the immigration court (during which time he could be detained or released on bail), 8 U.S.C.A. § 1229(a) (2000), or requesting to be voluntarily released to his own country. 8 U.S.C.A. § 1229(c) (2000); 8 C.F.R. § 240.25 (2002). Lugo read and signed a notice that explained these options. *See* 8 C.F.R. § 287.3 (2003). According to the INS records, Lugo "requested and was granted VR ['voluntary release'] to Mexico." [1]

¶ 12 The choices presented to Lugo complied with 8 C.F.R. § 240.25 and allowed him to make his own decision. Lugo chose to voluntarily depart the United States rather than request a hearing before an immigration court or petition for political asylum. The conditions of Lugo's release on bond, however, specified that he must remain at the local address he specified and inform the court if he were to change that address. They further specified that if he were absent for his trial the State might try him in absentia. After his voluntary departure into Mexico, Lugo did not contact counsel or the court. In choosing to voluntarily depart from this country without contacting the court or counsel, Lugo chose to be absent from the jurisdiction during the time when his trial was scheduled. *See State v. Tudgay,* 128 Ariz. 1, 3, 623 P.2d 360, 362 (1981) ("Even if appellant never actually received notice of the continued trial date, ... 'it was the appellant's duty under the conditions of his release to maintain contact with the court and/or his attorney as to the trial date and any changes

in that date.' ") (quoting *State v. Rice,* 116 Ariz. 182, 186, 568 P.2d 1080, 1084 (App. 1977)). In this respect, Lugo's choice was no less voluntary than was the decision of the defendant in *Romley,* 183 Ariz. at 145, 901 P.2d at 1175, in which this court indicated the trial court abused its discretion in failing to allow a trial in absentia. *See also Tudgay,* 128 Ariz. at 3, 623 P.2d at 362 ("Once a defendant's knowledge of the trial date is shown, the defendant has the burden of persuading the court that his absence was not voluntary.") (quoting *State v. Tacon,* 107 Ariz. 353, 356, 488 P.2d 973, 976 (1971)).

¶ 13 In *Romley,* the defendant was indicted on various drug-related charges and was advised in his arraignment of a future trial date through a minute entry that included a warning stating that if the defendant failed to appear, he might be tried in absentia. *Id.* at 140–41, 901 P.2d at 1170–71. Prior to trial, however, the defendant escaped from the jail and fled to Colombia. *Id.* at 141, 901 P.2d at 1171. The trial court subsequently changed the trial date through a minute entry. *Id.* Defendant's counsel argued as a consequence that his client's absence from trial proceedings was not voluntary pursuant to Arizona Rule of Criminal Procedure 9.1.[2] Despite the change of date, we noted that the defendant had actual notice of the trial date before his escape even though he had not yet been advised of the continued trial date. *Id.* at 144, 901 P.2d at 1174; *see Tacon,* 107 Ariz. at 355, 488 P.2d at 975 ("In order for a defendant to make a knowing and intelligent waiver of his right to be present at the trial, he must be aware that the trial will proceed without him if he fails to appear."). The defendant's escape and failure to appear for his original trial date demonstrated that it did not matter to the defendant if "his trial

---

**1.** An illegal alien that has been *convicted* of a crime cannot be granted a voluntary release petition. *See* 8 C.F.R. §§ 236.1(c)(4)-(5) (2000); 1240.26(b)(E) (2003).

**2.** Arizona Rule of Criminal Procedure 9.1 states that:

[A] defendant may waive the right to be present at any proceeding by voluntarily absenting himself or herself from it. The court may infer that absence is voluntary if the defendant had personal notice of the time of the proceeding,

the right to be present at it, and a warning that the proceeding would go forward in his or her absence should he or she fail to appear.

We have clarified, however, that notice of the original trial date and warning that trial could be held *in absentia* was sufficient to infer a knowing waiver of the right to be present at trial where defendant made no effort to keep apprised of changes in scheduling upon leaving the jurisdiction. *Romley,* 183 Ariz. at 143, 901 P.2d at 1173 (citations omitted).

was set for a few days or a few months away." *Id.* at 145, 901 P.2d at 1175. Thus, there was adequate evidence to find the defendant was voluntarily absent from the country and that he had effectively waived his right to be present at trial under Rule 9.1. *Id.*

¶ 14 Lugo's choice to request voluntary release and leave the country is not meaningfully distinct from the decision by the defendant in *Romley* to escape custody and leave the country; both were voluntary acts. While Lugo did not seek a hearing from INS, he could have done so. 8 U.S.C.A. § 1229(a). Because of the pending charges he was under legal compulsion to stay in the country (and the state). Moreover, once he left the country, Lugo made no effort to contact his attorney and made no attempt to legally re-enter the country to attend his trial. By his signature on the INS notice of rights, Lugo acknowledged that he understood what his choices were and that he chose to depart the country. Thus, both the facts in this case and those in *Romley* indicate a knowing and voluntary absence from trial.

¶ 15 "Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong. And yet this would be precisely what it would do if it permitted ... an absconding from the jurisdiction while at large on bail, during the pendency of a trial before a jury, to operate as a shield [from prosecution]." *Romley*, 183 Ariz. at 145, 901 P.2d at 1175 (quoting *Diaz v. United States*, 223 U.S. 442, 458, 32 S.Ct. 250, 56 L.Ed. 500 (1912)).[3]

■ ¶ 16 Although it was not raised to the court as a reason that Lugo should not be

tried in absentia, Lugo, in his response to the petition for special action, argues that he was not informed of his right to be present at trial or of the consequences of his failure to appear. He so argues because the court clerk who interpreted for him during part of his release hearing on November 24, 2004, was not certified to interpret in the superior court or even necessarily fluent in the Spanish language. Thus, Lugo argues, there is insufficient evidence to conclude that he signed his release order after being fully informed of his duties and obligations. We disagree.

¶ 17 In several pretrial hearings, in the presence of both Lugo's counsel and court interpreters, the court advised Lugo of the State's right to try Lugo in absentia. In the presence of a court interpreter at an initial pre-trial conference on November 2, 2004, Lugo signed a "Trial Date Acknowledgment" stating that "I further understand that if I fail to appear for the above hearings, [a trial management conference on January 12, and a firm trial on January 18, 2005,] a warrant will be issued for my arrest and the hearings, including my trial, can proceed in my absence."[4] This form bears the signature of the court interpreter attesting that she "interpreted during the attorney's explanation of the contents of this form to [Lugo]." Thus, Lugo had notice of the dates of both the trial management conference and the trial and notice of the consequences of his failure to appear.[5]

¶ 18 At a November hearing on Lugo's motion to reduce bail, in the presence of a court interpreter, Lugo signed and received

---

3. Had Lugo not chosen to voluntarily depart the country and instead been deported, any attempt to re-enter the United States would have made him subject to criminal penalties, 8 U.S.C.A. § 1326(a) (1996) ("[A]ny alien who [] has been ... deported ... and thereafter [] enters, attempts to enter, or is at any time found in, the United States ... shall be fined under Title 18 or imprisoned not more than 2 years, or both."), as would any re-entry into the United States after having been convicted of a crime in the United States. *See* 8 U.S.C.A. § 1326(b) (1996). In contrast, if Lugo were to attempt to re-enter the United States following a voluntary departure, he would not be subject to criminal prosecution for criminal re-entry. 8 U.S.C.A. § 1326(a).

4. In its motion for reconsideration, the State also announced its intention to proceed in absentia should Lugo fail to appear for his scheduled court dates.

5. We note that Lugo's trial date did change, but it did not do so until Lugo voluntarily departed the United States and failed to appear for his trial management conference. Like the court in *Romley*, we assume that because Lugo had notice of his trial management conference and his trial date, but left the jurisdiction without any attempt to appear at either, or contact his attorney, Lugo's absence was voluntary. 183 Ariz. at 145, 901 P.2d at 1175.

a copy of his release conditions. Those conditions stated that Lugo had a right to appear at his trial and that his failure to appear could result in the court proceeding in his absence. Thus, Lugo was again advised of the conditions of his release.

¶ 19 Later, but in the same minute entry, when Lugo was unable to provide a verifiable and stable residence address, Judge Blakey ordered that Lugo not be released "until PSA can affirm a verifiable address for the [c]ourt." By this time the official court interpreter had departed, but the courtroom clerk, who spoke Spanish, was directed to interpret the court's order to Lugo because the court interpreter was no longer present. The court vacated the release order. Then, when Lugo's counsel provided the court with an address, the court issued a release order nearly identical to the first release order.

¶ 20 Lugo's counsel was present with Lugo at this subsequent hearing when the court clerk acted as the court interpreter, and Lugo was again advised of the State's right to proceed in his absence if he did not appear.[6] Neither Lugo nor his attorney requested an official interpreter,[7] nor did either object to the court clerk acting as translator

or the manner in which the translation was done. Thus, we find no merit to the argument that Lugo was not aware of his trial date or of the conditions of his release.

¶ 21 Given Lugo's voluntary absence from his trial, it was error for the court to rule that Lugo could not be tried in absentia according to Arizona Rule of Criminal Procedure 9.1.

## CONCLUSION

¶ 22 Accordingly, we accept jurisdiction and grant relief. The court's denial of the State's motion to try Lugo in absentia is vacated, and we remand to the lower court for additional proceedings consistent with this decision.

CONCURRING: PATRICK IRVINE and PATRICIA A. OROZCO, Judges.

---

6. Lugo's counsel, Humberto Rosales, is a "certified Spanish speaker."

7. Lugo cites no case that requires the trial court to have a "certified" interpreter.