IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 25 2006

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| LINDSEY M., | ) | |
| | ) | 2 CA-JV 2005-0040 |
| Appellant, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ARIZONA DEPARTMENT OF | ) | |
| ECONOMIC SECURITY, | ) | |
| JOSE E., and KENNETH E., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF SANTA CRUZ COUNTY

Cause No. MD04-011

Honorable Kimberly A. Corsaro, Judge Pro Tempore

AFFIRMED

Matthew C. Davidson                                                       Nogales
                                                        Attorney for Appellant

Terry Goddard, Arizona Attorney General
  By Claudia Acosta Collings                                              Tucson
                                            Attorneys for Appellee Arizona
                                       Department of Economic Security

E C K E R S T R O M, Judge.

¶1        Appellant Lindsey M. is the mother of Jose E., born in September 2001, and Kenneth E., born in April 2004. Lindsey is also the mother of Shanell E., who was born in May 2003. Shanell was nineteen months old when she died in December 2004 from nonaccidental injuries she apparently sustained while in her parents' care. The circumstances of her death led the Arizona Department of Economic Security to take Jose and Kenneth into protective custody and place them in foster care. In March 2005, they were adjudicated dependent as to Lindsey, who pled no contest to an amended petition alleging that she was unable to parent the children because she was incarcerated.[1]

¶2        At the dependency adjudication hearing held on March 14, the juvenile court scheduled for April 11 the disposition hearing contemplated by A.R.S. § 8-845 and Rule 56, Ariz. R. P. Juv. Ct., 17B A.R.S. On April 11 and again on May 3, the court continued the disposition hearing, each time because of problems in securing the attendance of the parents, both of whom were incarcerated. When the court held the hearing on May 17, Lindsey was not present because her attorney apparently had failed to arrange for Lindsey to be transported to court for the disposition hearing, either on May 3 or May 17.

¶3        The juvenile court expressed concern that the disposition hearing had been postponed twice, that "the delay has been way beyond the bounds of acceptability in a dependency case," and that Lindsey's attorney was responsible for her absence from the

---

[1]The children were also adjudicated dependent as to their father, but he is not a party to this appeal.

hearing. Noting that the children's interests are paramount in a dependency proceeding and that "they need a disposition order," the court proceeded with the hearing over the objection of Lindsey's attorney. The court heard testimony from the case manager, approved the parents' case plans, and ordered that the children remain in their foster placement.

¶4 On appeal, Lindsey claims the juvenile court erred in proceeding without her at the disposition hearing, contending her absence was involuntary. Before we can reach that issue, however, we first must address the department's contention that we lack jurisdiction to consider the appeal because a dependency disposition order is not a final, appealable order and because Lindsey is not an aggrieved party. *See In re Maricopa County Juvenile Action No. J-79149*, 25 Ariz. App. 78, 78, 541 P.2d 404, 404 (1975) (appellate court must preliminarily ascertain that it has jurisdiction before reaching merits of juvenile appeal).

¶5 Section 8-235(A), A.R.S., and Rule 88(A), Ariz. R. P. Juv. Ct., 17B A.R.S., provide that an "aggrieved party" may appeal "from a final order of the juvenile court." To be final and procedurally appealable, the order must be in writing, signed by the court, and filed with the clerk. *See* Ariz. R. P. Juv. Ct. 89(A), 17B A.R.S. The dependency disposition order here satisfies those criteria.

¶6 Our supreme court's only pronouncement on what constitutes a final, substantively appealable order in a dependency proceeding is in *In re Yavapai County Juvenile Action No. J-8545*, 140 Ariz. 10, 13-14, 680 P.2d 146, 149-50 (1984). The court

3

held that an order dismissing a dependency proceeding was a final order. The court noted that, because juvenile proceedings in general, and dependency proceedings in particular, are unique, "we are not bound by the definition employed [in earlier decisions] in determining if an order is final for the purposes of exercising general appellate jurisdiction." *Id.* at 13 n.1, 680 P.2d at 149 n.1. Moreover, the court noted, "a very narrow, technical conception of what constitutes a final order . . . [is] inappropriate in cases involving the important and fundamental right to raise one's children." *Id.* at 14, 680 P.2d at 150.

¶7        Examples of other orders in dependency proceedings that have either been held to be or recognized as final and appealable are "orders declaring children dependent and orders reaffirming findings that children are dependent," *id.*; "an order issued pursuant to the juvenile court's periodic review of a determination of dependency or of a custodial arrangement," *id.*; an order terminating a parent's visitation rights, *In re Maricopa County Juvenile Action No. JD-5312*, 178 Ariz. 372, 374, 873 P.2d 710, 712 (App. 1994), or substantially limiting those rights, *In re Maricopa County Juvenile Action No. JD-500116*, 160 Ariz. 538, 542-43, 774 P.2d 842, 846-47 (App. 1989); and an order granting a motion pursuant to Rule 64(A), Ariz. R. P. Juv. Ct., 17B A.R.S., to terminate a parent's rights to a dependent child. *E.g., Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, ¶¶ 12-13, 118 P.3d 37, 40 (App. 2005). Conversely, orders found to be interlocutory and not appealable in dependency actions include an order moving a child from one local foster home to another, from which the first foster parent had attempted to appeal, *In re Maricopa*

4

*County Juvenile Action No. J-57445*, 143 Ariz. 88, 92, 691 P.2d 1116, 1120 (App. 1984), and an order entered after a permanency hearing at which concurrent plans of family reunification and severance were approved. *Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, ¶ 8, 1 P.3d 155, 158 (App. 2000).

¶8        We conclude that a dependency disposition order entered pursuant to Rule 56(E), Ariz. R. P. Juv. Ct., following an adjudication of dependency pursuant to Rule 55, Ariz. R. P. Juv. Ct., 17B A.R.S., is a final, appealable order. Our conclusion is informed by the supreme court's comments in *Yavapai County No. J-8545*, recognizing that, in a dependency proceeding, there typically will be more than one "final" order subject to appeal by an aggrieved party. 140 Ariz. at 14, 680 P.2d at 150. In dicta, the court implied that the disposition order in which custody of a dependent child is first formally determined is one such order, stating:

> A finding of dependency disposes of the issue of whether a child is dependent and simultaneously triggers a custody proceeding. It is, therefore, only the first step in an effort to provide for minor children who are not being adequately cared for. Whether determination of dependency and the concom[]itant award of custody are considered two separate actions—a dependency proceeding to determine if a child is dependent, and a custody proceeding triggered thereby—or two parts of a single action is unimportant.

*Id*. at 14-15, 680 P.2d at 150-51.

¶9        The clear implication of the court's language, both in the quoted passage and elsewhere in the opinion, is that both the dependency adjudication order and the disposition

5

order awarding custody of a dependent child are appealable orders. Not only are both of those initial orders separately appealable, but subsequent orders reaffirming a child's dependent status and ratifying or changing the child's placement are likewise final and appealable. As the court stated:

> A parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials. This does not mean that he or she shall be able to challenge *a custodial arrangement* every week or every month. What it means is that an aggrieved party may appeal an order issued pursuant to the juvenile court's periodic review of a determination of dependency *or of a custodial arrangement*.

*Id*. at 14, 680 P.2d at 150 (emphasis added).

¶10 The department also argues that, even if the disposition order is appealable, Lindsey was not aggrieved by the order that Jose and Kenneth remain in their foster placement. In this vein, the department emphasizes that additional proceedings to follow "would determine the ultimate outcome of the case" and the disposition order and foster placement "did not . . . substantially impact [Lindsey]'s practical ability to have contact with her children" because she was incarcerated.

¶11 The department's argument is factually accurate but not persuasive. Even though Lindsey could not regain custody of her children while she remained incarcerated, her "important and fundamental right to raise [her] children" is alone sufficient to make her an aggrieved party under § 8-235 for purposes of appealing from the disposition order. *Yavapai County No. J-8545*, 140 Ariz. at 14, 680 P.2d at 150. Moreover, at the disposition

6

hearing and in the resulting order, the court also addressed which reunification services would be available to and appropriate for Lindsey, matters that obviously affect her directly.

¶12 Rather than requiring a court to evaluate individually the content and effect of every dependency disposition order to determine whether a parent is sufficiently "aggrieved" by the order to be entitled to appeal it, we believe it expedient, for the courts and parties alike, to have a bright-line rule that a dependency disposition order is a final, separately appealable order, and we so hold. We further hold that the parent of a dependent child who contests either the child's dependency adjudication or the resulting disposition order is, by definition, an aggrieved party for purposes of § 8-235.

¶13 Having determined that the dependency disposition order is an appealable order and that Lindsey qualifies as an aggrieved party entitled to appeal it, we turn to the substance of her claim. In the single issue raised on appeal, she contends the court "erred" in proceeding with the disposition hearing when she was involuntarily absent, having not been transported to court from the county jail. We review for an abuse of discretion the juvenile court's decision to proceed in her absence. *See State ex rel. Thomas v. Blakey*, 211 Ariz. 124, ¶ 10, 118 P.3d 639, 641 (App. 2005).

¶14 Although the department argues that no authority expressly establishes a parent's "absolute right" to attend a dependency disposition hearing, the rules of procedure for the juvenile court clearly contemplate the presence of "the parent, guardian or Indian custodian" of a dependent child at a disposition hearing, Rule 56(E)(5), as well as a

7

preliminary protective hearing, Rule 50(C)(5); an initial dependency hearing, Rule 52(C)(4), (D)(8); a settlement conference, Rule 53(D)(4); a pretrial conference, Rule 54(C)(2)(b); a dependency adjudication hearing, Rule 55(E)(6); a dependency review hearing, Rule 58(E)(6); and a permanency hearing, Rule 60(E)(4). Accordingly, we conclude that Lindsey had a right to attend the disposition hearing. *See Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, ¶ 8, 42 P.3d 1163, 1165 (App. 2002) ("A parent's right to 'the companionship, care, custody, and management of his or her children' is a fundamental, constitutionally protected right . . . ."), *quoting Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212, 31 L. Ed. 2d 551, 558 (1972).

¶15    The juvenile court apparently concluded that her absence from the hearing was the result of her lawyer's failure to take the steps necessary to have her transported from jail to court. We need not resolve the question whether Lindsey should have been bound by her lawyer's omissions because, ultimately, to be entitled to the relief she requests—vacating the disposition order and holding a new disposition hearing—she would need to show that she was prejudiced by the juvenile court's decision to proceed in her absence. *See Creach v. Angulo*, 189 Ariz. 212, 214-15, 941 P.2d 224, 226-27 (1997) (to justify reversal, error must have been substantial and prejudicial); *In re Pima County Severance Action No. S-2710*, 164 Ariz. 21, 24, 790 P.2d 307, 310 (App. 1990) (no reversal of termination because juvenile court's failure to order social study did not prejudice parent).

¶16 The only prejudice Lindsey asserted in her opening brief was that she was unable to testify about "her wishes as to the placement of the children." Elaborating only slightly in her reply brief, Lindsey states:

> At the hearing, Mother would have testified as to that [sic] her children belong with her parents or her sister pending return to her care and custody . . . . Where these children are going to be placed pending the outcome of the criminal case was the only remaining issue of the dependency at the time of the disposition. The court heard no other testimony other than the C[hild] P[rotective] S[ervices] worker on the issue of placement, and placed the children in foster care outside the family.

¶17 Lindsey does not argue, nor does the record suggest, that her physical presence or anything she might have said could have persuaded the court to place the children with any of the children's relatives. The CPS case manager testified that several relatives had expressed a willingness to take custody of the children but that animosity between Lindsey's and the father's families made any relative placement inappropriate without prior therapeutic intervention.

¶18 In ruling, the juvenile court approved family reunification as the case plan goal but cited the animosity between the parents' two families as its reason for finding "that the children are properly placed in foster care, a neutral setting at this point in time under the circumstances." The court further stated:

> I think the concern, at least from the Court's perspective, we have two sets of information alleging violence between the two families, of two separate incidents. I don't know about anymore [sic] than just two. That's the concern, placing these children in a position where one family with animosity towards

9

the other is going to be involved in having to set up or perhaps facilitate visits with the other family where there is still friction between the two.

I agree, I think the family placement is the priority and certainly the preference for the children, but only if it can be in a safe environment where this animosity isn't going to either create a situation of potential violence or the emotional abuse [of the children] by just hearing the comments being made about the other family.

**¶19** Given these circumstances and the evidence before the court, Lindsey has failed to show that her presence at the hearing would have had any effect on the juvenile court's decision to leave the children in a nonrelative foster placement until their physical and emotional safety with relatives could be assured. Indeed, Lindsey's attorney stated he understood the court's reasoning in deciding to leave the children in their foster placement until "other family members" could potentially "become viable candidates for placement."

**¶20** We find no abuse of the juvenile court's discretion in determining that, after two previous postponements, the best interests of the children dictated that the disposition hearing proceed as scheduled despite Lindsey's absence. Because Lindsey has neither argued nor shown any prejudice resulting from her absence from the disposition hearing at which she was nonetheless represented by counsel, we affirm the juvenile court's disposition order of May 24, 2005.

_____
PETER J. ECKERSTROM, Judge

CONCURRING:

_____
JOSEPH W. HOWARD, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge