NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

VICTOR H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, N.S., *Appellees.*

No. 1 CA-JV 15-0267
FILED 3-17-2016

Appeal from the Superior Court in Maricopa County
No. JD527738
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, P.L.L.C., Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Michael F. Valenzuela
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Donn Kessler joined.

---

**W I N T H R O P**, Judge:

¶1 Victor H. ("Father") appeals the juvenile court's order terminating his parental rights to N.S. ("the child"). Father contends the juvenile court abused its discretion in conducting a termination adjudication hearing and severing his parental rights after he failed to appear for that hearing. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2 Father and K.S. ("Mother") are the biological parents of the child.[2] In May 2014, shortly after the child's birth, the Department of Child Safety ("DCS") removed the child from Mother and took the child into DCS's temporary physical custody due to allegations of substance abuse, domestic violence, and neglect.[3] Mother had tested positive for marijuana and methamphetamine during her pregnancy with the child and also reported using cocaine on the weekends with Father. On May 29, 2014, DCS filed a dependency petition alleging the child was dependent as to Father

---

[1]   We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[2]   The juvenile court also terminated the parental rights of Mother, who filed a separate notice of appeal and is not a party to this appeal.

[3]   At the outset of these proceedings, the child was taken into care by Child Protective Services ("CPS"), formerly a division of the Arizona Department of Economic Security ("ADES"), and ADES filed the dependency petition in this case. In May 2014, however, CPS was removed as an entity within ADES and replaced by DCS, an entity outside of ADES. *See* 2014 Ariz. Sess. Laws, ch. 1, §§ 6, 20, 54 (2d Spec. Sess.). Accordingly, DCS was substituted for ADES in this matter, *see* ARCAP 27, and references to DCS in this decision encompass both ADES and the former CPS.

due to domestic violence, substance abuse, neglect, and an open dependency regarding four other children.

¶3            After removing the child from Mother—who had resided in shelters and treatment centers for numerous months before the child's birth—DCS had difficulty locating Father, and Mother could not inform DCS of Father's address or location.  In the months immediately following the child's removal, Father left DCS messages twice, but when his assigned case manager tried to call him back, he did not answer or return messages. DCS twice attempted to personally serve Father at his last known address and otherwise investigated his whereabouts, but was unsuccessful; consequently, DCS served Father with the dependency petition through publication.

¶4            On August 12, 2014, Father failed to appear for the set publication hearing on the dependency petition, and the juvenile court found that service by publication was proper and complete.  The court proceeded with a dependency hearing in Father's absence, found the child dependent as to Father, and approved a case plan of family reunification concurrent with severance and adoption.

¶5            Over the next several months, DCS could manage only sporadic telephonic contact with Father, although his case manager advised him of the availability of and need to participate in reunification services. In November 2014, Father was charged with marijuana possession, and he was reported to still be using illegal substances with Mother.

¶6            In December 2014, Father participated in a paternity test, which confirmed his status as the child's biological father.  Father declined, however, to participate in any other reunification services, despite DCS's requests that he do so.  Throughout the entirety of the case—from the child's removal in May 2014 to the severance hearing in July 2015—Father did not try to initiate or have any contact with the child or provide her with any financial support or gifts.

¶7            At a January 29, 2015 report and review hearing, the juvenile court approved changing the case plan to severance and adoption. Approximately one month later, DCS moved to sever Father's parental rights to the child on the ground of abandonment.  Father's whereabouts continued to be unknown, and the juvenile court again approved service by publication and set a publication hearing for late May 2015.  DCS published notice of the severance hearing for four consecutive weeks in a newspaper of general circulation.

¶8          At the May 26, 2015 publication hearing, Father failed to appear. DCS provided the court with its service by publication documents, but also asked the court to continue the hearing because DCS believed—based on its "parent locate" service—that Father was incarcerated in the Maricopa County jail. The court continued the hearing and set the matter for publication-severance on July 7, 2015. DCS twice attempted to serve Father at the county jail, but failed because he had already been released.

¶9          Meanwhile, in late May and June 2015, Father reestablished telephonic contact with his DCS case manager and provided her with an address in Phoenix where he was residing with relatives. During approximately five conversations, the case manager provided Father with his attorney's contact information, informed him of the July 7 hearing, and warned him that if he did not attend that hearing, the court could proceed in his absence and sever his parental rights. Also, after receiving Father's new contact information, the case manager mailed a "service letter" to Father.[4]

¶10          At the July 7, 2015 hearing, Father failed to appear, and the juvenile court found Father had been properly served by publication. After finding that Father had notice of the hearing and had not presented good cause for his failure to appear, the court granted DCS's request to proceed with an accelerated severance hearing in Father's absence.[5]

¶11          At the hearing's conclusion, the court ruled from the bench that adequate evidence supported a finding that Father had abandoned the child, and severance of Father's parental rights served the child's best interest. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1) (Supp. 2015). At the court's direction, DCS lodged a written Findings of Fact, Conclusions of Law, and Order ("FFCLO") consistent with the bench ruling.

¶12          Before the FFCLO could be signed and filed, however, Father moved to set aside the not-yet-final severance order on the basis that he possessed good cause for his failure to appear. Father argued he had arrived for the hearing late because he had not correctly anticipated the

---

[4]          The parties have not pointed to, and we have not found, a copy of the "service letter" in the record on appeal. The letter was presumably received by Father, however, as Father has never argued or presented evidence that he did not receive the letter.

[5]          Father's counsel was present at the hearing and cross-examined DCS's sole witness, Father's case manager.

time it would take him to ride public transportation to the courthouse. He explained he had arrived when the hearing was ongoing, but waited outside because court was in session. Father did not, however, submit an affidavit or other evidentiary support in support of his motion. In response, DCS argued Father's motion lacked evidentiary support, the events as described by Father did not rise to the level of excusable neglect, and Father had failed to allege a meritorious defense to the severance motion; accordingly, he had not shown good cause for his failure to appear.

¶13 On August 3, 2015, the court's signed FFCLO was filed, severing Father's parental rights to the child. Father filed a timely notice of appeal.[6] We have appellate jurisdiction pursuant to A.R.S. § 8-235(A) (2014) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

¶14 Father argues DCS failed to make adequate efforts to locate him and provide him notice of the July 7 hearing, and the juvenile court therefore abused its discretion by holding a severance hearing in his absence and terminating his parental rights.[7] Even assuming *arguendo* that Father has not waived the opportunity to raise this claim on appeal by failing to properly raise it in the juvenile court, Father's claim fails because he received both publication and actual notice of the hearing coupled with warnings about the consequences of failing to appear, and lacked good cause for his failure to appear.[8]

---

[6] In a minute entry order dated the same day as Father's notice of appeal, but filed the next morning, the juvenile court denied Father's motion to set aside the severance.

[7] To the extent that Father's argument implies DCS had a duty to make reasonable efforts to reunify him and the child before severing his parental rights on the abandonment ground, we have previously rejected that contention. *See Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 66, ¶ 15, 993 P.2d 462, 467 (App. 1999) (holding that a mother who had abandoned her child "was not entitled, based on constitutional due process principles, to require [DCS] to provide her with reunification services before seeking severance of her rights on the statutory ground of abandonment").

[8] Father also notes that parents possess a fundamental liberty interest in the care, custody, and management of their children. *Kent K. v. Bobby M.*,

**¶15**        We review for an abuse of discretion the juvenile court's decision to proceed against a person in absentia. *See State ex rel. Thomas v. Blakey*, 211 Ariz. 124, 126, ¶ 10, 118 P.3d 639, 641 (App. 2005). A court abuses its discretion when the court exercises its discretion in a manner that is manifestly unreasonable, based on untenable grounds, or for untenable reasons. *Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 83, ¶ 19, 107 P.3d 923, 929 (App. 2005) (citation omitted).

**¶16**        A parent in a termination-of-parental-rights case initiated by petition has a statutory duty to appear at related hearings, and

> [i]f a parent does not appear at the pretrial conference, status conference or termination adjudication hearing, the court, after determining that the parent has been instructed as provided in [A.R.S.] § 8-535 [(2014)], may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear.

A.R.S. § 8-537(C). Rule 64(C), Ariz. R.P. Juv. Ct., extends this duty to termination proceedings initiated by motion. *See Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 100-01, ¶ 14, 158 P.3d 225, 229-30 (App. 2007) (holding that Rule 64(C) independently authorizes the juvenile court to proceed by default in a parent's absence in termination proceedings initiated by motion). Under Rule 64(C), a parent facing termination of his parental rights must receive a "notice of hearing" advising him that "failure to appear at the initial hearing, pretrial conference, status conference or termination adjudication hearing, without good cause, may result in a

210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 11, 995 P.2d 682, 684 (2000)). Even fundamental rights are not absolute, however. *Id.* (citing *Michael J.*, 196 Ariz. at 248, ¶ 12, 995 P.2d at 684). A court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the best interest of the children. *See* A.R.S. §§ 8-533(B), -537(B) (2014); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41, 110 P.3d at 1015–16, 1022. Father does not contest the juvenile court's findings on the statutory and best interest grounds and, thus, has waived any argument as to the court's finding of those grounds in this appeal. *See Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459, ¶ 29, 11 P.3d 413, 418 (App. 2000) (stating that issues not raised in appellate briefs are deemed waived).

finding that the parent . . . has waived legal rights, and is deemed to have admitted the allegations in the motion or petition for termination."

¶17        Rule 64(C) also provides that in the absence of the parent, the juvenile court may proceed with hearings that "may result in the termination of parental rights based upon the record and evidence presented," provided the parent received proper notice and service. A failure to appear is not by itself sufficient to waive due process rights if a parent has not received proper notice. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 211, ¶ 20, 181 P.3d 1126, 1132 (App. 2008). But when notice is proper, a juvenile court may proceed with the termination of parental rights if the parent fails to appear without good cause shown. *See Adrian E.*, 215 Ariz. at 100, ¶ 12, 158 P.3d at 229.

¶18        In this case, the record supports the juvenile court's findings that Father received proper notice of the July 7 publication-severance hearing, including specific warnings about the consequences of failing to appear, and that Father lacked good cause for his failure to appear.[9] Given Father's lack of stable housing and general refusal to participate throughout the dependency matter, DCS had difficulty keeping track of his location. Consequently, the juvenile court approved serving Father with the severance motion and notice of hearing through publication. DCS published notice of the hearing—which contained an admonition regarding the consequences of failing to appear—for four consecutive weeks in a newspaper of general circulation. Moreover, Father's case manager spoke with him on the phone on several occasions leading up to the hearing, gave him actual notice of the hearing, and warned him about the consequences of failing to appear.[10] A confirming letter in that regard was also sent to the address Father provided, and Father has not contended on appeal that he did not receive that letter advising of the date and time of the hearing, and reminding him of the consequences for failure to appear. Accordingly, Father received both court-approved service by publication and actual notice of the hearing, both verbally and in writing, and specific warnings about the consequences of failing to appear.

---

[9]        Father does not specifically contest the court's finding that he lacked good cause for his failure to appear.

[10]        Also, Father's motion to set aside the severance order explicitly acknowledged he knew about the hearing's date, time, and location, and indicated he had tried to attend it. Given this acknowledgment, any potential mistake could not have been prejudicial.

**¶19** Father nevertheless argues on appeal that he could have had more notice and a better warning if DCS had made "reasonable efforts" to locate him. The record, however, shows that DCS did try to engage Father. At the outset of the case, DCS spoke with Mother about Father's whereabouts, but she did not know his location. DCS also tried to call Father, but he did not return his case manager's voice messages. Instead, he engaged in only minimal sporadic contact with DCS, and indicated he did not want to participate in the reunification services offered to him by DCS. Moreover, when DCS believed that it had located Father in jail, DCS asked the court to continue the publication hearing so DCS could attempt to personally serve him with the severance motion and notice of hearing. DCS then twice tried unsuccessfully to serve him. We conclude DCS made "reasonable efforts" to locate Father. Accordingly, the record supports the juvenile court's decision to proceed with the severance hearing in Father's absence, and we find no abuse of the court's discretion.

**CONCLUSION**

**¶20** The juvenile court's order terminating Father's parental rights to the child is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama